**2017 IL 121681**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 121681)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
ANTHONY S. BROWN, Appellant.

*Opinion filed November 30, 2017.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    In this appeal, we address a disagreement in the appellate court on the proper standard for reviewing a guilty-plea defendant's challenge to his plea counsel's performance raised in a petition seeking relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). The specific issue presented is whether defendant made a substantial showing of a violation of his constitutional

right to counsel by alleging that he entered into a negotiated guilty-plea agreement in reliance on his counsel's erroneous sentencing advice.

¶ 2        The trial court granted the State's motion to dismiss defendant's postconviction petition without an evidentiary hearing. The appellate court affirmed. In relevant part, the court rejected two other appellate court decisions holding that such a claim was sufficient, standing alone, to establish prejudice and to warrant an evidentiary hearing. See 2016 IL App (4th) 140760, ¶¶ 11, 25 (disagreeing with and ultimately rejecting *People v. Kitchell*, 2015 IL App (5th) 120548, and *People v. Stewart*, 381 Ill. App. 3d 200 (2008)). For the reasons that follow, we agree with the appellate court's conclusion and affirm its judgment, albeit under a slightly different rationale.

¶ 3                                    BACKGROUND

¶ 4        On September 13, 2012, defendant Anthony S. Brown was charged by information with the offenses of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)) and home invasion with a firearm (720 ILCS 5/19-6(a)(3) (West 2012)). The charges arose from an incident that occurred on September 9 in Champaign, Illinois, at the home of defendant's former girlfriend.

¶ 5        On May 6, 2013, defendant entered a fully negotiated guilty plea to the charge of being an armed habitual criminal in the circuit court of Champaign County. In exchange, defendant was sentenced to 18 years' imprisonment, and the State nol-prossed the home invasion charge.

¶ 6        Before entry of the plea agreement, the trial court explained the charges, noting that defendant was charged as an armed habitual criminal after having previously been convicted of unlawful use of a weapon by a felon and unlawful possession with intent to deliver cannabis. The court admonished defendant that the armed habitual criminal charge was a Class X felony with a minimum sentence of 6 years and a maximum sentence of 30 years, a 3-year term of mandatory supervised release, and a potential fine of $25,000. The court further admonished defendant of his trial rights and the consequences of waiving those rights and entering a guilty plea. Defendant responded that he understood his rights and that he intended to plead guilty.

¶ 7    In presenting the plea agreement, the State recommended a sentence of 18 years' imprisonment and payment of fees. When asked by the trial court if defendant agreed with those terms, defendant responded affirmatively. Defendant denied that he was promised anything and denied that he was threatened or forced to accept the plea agreement.

¶ 8    The State then offered the following factual basis for the plea agreement:

"On September 9 of 2012, Champaign police were called to 1207 Crispus in Champaign by Shauntrayah Foster and Taylor Rodgers, who were reporting that the defendant, who they knew as their mother's ex-boyfriend, was in the home with a gun. Police responded and had to force entry into the home. As they forced entry, the defendant ran down the hallway towards them. Three police officers saw him lifting the gun from the area of his waistband [and] pointing it in their direction. They discharged their weapons. The revolver was recovered where [defendant] dropped it. It was sent to the state lab and determined to be a .22 caliber revolver that was in functioning condition."

After the State concluded its factual basis, the trial court asked defendant's attorney if he believed the State had witnesses who would testify to those facts. Defense counsel responded affirmatively. The court asked defendant if he was pleading guilty to the charge of being an armed habitual criminal, and defendant responded "yes."

¶ 9    The trial court accepted the plea agreement and proceeded to sentencing. Consistent with the plea agreement, the court sentenced defendant to 18 years' imprisonment and dismissed the home invasion charge.

¶ 10   On May 22, 2013, defendant filed a *pro se* notice of appeal. Defendant attached a signed affidavit, indicating that he "took plea at 50% not 85%." The trial court appointed the Office of the State Appellate Defender to represent defendant.

¶ 11   On June 7, 2013, defendant filed a *pro se* motion for reduction of sentence, asserting that he received ineffective assistance of trial counsel because his counsel erroneously advised defendant that he would serve only 50% of his 18-year sentence. The trial court denied the motion because defendant entered a negotiated guilty plea and, therefore, was not permitted to file a motion to reduce sentence.

¶ 12    On August 16, 2013, the appellate court dismissed defendant's direct appeal at his request. Defendant did not refile an appeal.

¶ 13    On February 27, 2014, defendant filed a *pro se* postconviction petition, challenging the constitutionality of the armed violence statute that relied on his prior conviction for unlawful use of a weapon. Defendant also argued that he received ineffective assistance of trial counsel because counsel misinformed him on his potential eligibility for good time credit and incorrectly advised defendant that he would serve only 50% of his 18-year sentence.[1]

¶ 14    The trial court appointed the Champaign County public defender to represent defendant in the postconviction proceedings. Defendant's counsel filed an amended postconviction petition on June 19, 2014. The amended petition is the subject of this appeal.

¶ 15    Defendant's amended petition withdrew his constitutional challenge to the armed violence statute and, instead, focused exclusively on his sentencing claim. Specifically, defendant alleged that trial counsel told him that he would serve 85% of his sentence if convicted of the home invasion charge but that he would serve only 50% of his sentence if convicted of the armed habitual criminal charge. Defendant noted that his counsel's advice was erroneous because the applicable sentencing statute requires a person convicted of the offense of armed habitual criminal to serve 85% of the sentence (730 ILCS 5/3-6-3(a)(2)(ii) (West 2012)). In addition, the record of the plea hearing demonstrates that defendant was not advised on how much of his sentence he would have to serve. Nor did any of the accompanying documentation (the charges, the sentencing papers, or the mittimus) include that information. Defendant further alleged in his amended petition that his counsel's ineffective assistance prejudiced him because he pleaded guilty based on the erroneous belief that he would serve only 50% of his 18-year sentence when he actually must serve 85%, an additional 6 years in prison. Defendant asserted that if he had been properly advised on sentencing he "would not have accepted the plea and would have taken the case to trial wherein he would have been acquitted."

---

[1]Section 3-6-3(a)(2.1) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(2.1) (West 2012)) allows defendants convicted of certain enumerated offenses to receive "day-for-day" credit against their sentences, potentially allowing those defendants to serve only 50% of their sentence.

Defendant argued that he made the requisite "substantial showing of a violation of a constitutional right" and was entitled to an evidentiary hearing.

¶ 16      Defendant attached several documents to his amended petition, including his own affidavit. In his affidavit, defendant averred that he trusted his trial counsel to give him accurate information on sentencing and believed his counsel because "[counsel] showed me paperwork for the plea and it said nothing about having to do 85%." Defendant further attested that "right before the plea" he confirmed with his trial counsel that he would serve only 50% of his sentence and that counsel told defendant, "don't play with these people."

¶ 17      Defendant did not discover that his trial counsel erroneously advised him on sentencing until he arrived at the Department of Corrections. Although defendant attempted to contact his trial counsel after learning this information, he was never contacted by counsel. Defendant averred that he would not have accepted the plea agreement if he knew that he was required to serve 85% of his 18-year sentence.

¶ 18      On August 18, 2014, the State filed a motion to dismiss defendant's amended petition. The State argued that defendant failed to establish the requisite substantial showing of a constitutional violation to entitle him to an evidentiary hearing.

¶ 19      On August 26, 2014, the trial court granted the State's motion to dismiss. The court determined that defendant was not prejudiced by any error in counsel's advice on sentencing.

¶ 20      On direct appeal, the appellate court affirmed. 2016 IL App (4th) 140760. The court first noted that defendant's position was supported by the decisions in *Stewart*, 381 Ill. App. 3d at 206, and *Kitchell*, 2015 IL App (5th) 120548, ¶ 13, both holding that a postconviction petitioner makes a substantial showing of a constitutional violation and is entitled to an evidentiary hearing when he alleges in his petition that he entered into a guilty plea in reliance on his trial counsel's erroneous sentencing advice. 2016 IL App (4th) 140760, ¶ 11.

¶ 21      The appellate court, however, declined to follow *Stewart* and *Kitchell* after determining that those decisions conflicted with this court's opinion in *People v. Rissley*, 206 Ill. 2d 403 (2003), as it applied the familiar two-prong *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668 (1984)) to a guilty-plea

defendant's claim of ineffective assistance of counsel. The appellate court explained,

> "[*Stewart* and *Kitchell*] assume a defendant can show prejudice [for purposes of *Strickland*] simply by asserting that, but for plea counsel's bad advice, he or she would have pleaded differently and would have gone to trial. But *Rissley* is quite clear: a bare allegation to that effect will not establish prejudice. [Citation.] The defendant must additionally claim he or she is innocent of the charges or must identify a plausible defense to the charges. [Citation.]" 2016 IL App (4th) 140760, ¶ 25.

Because defendant made neither assertion, the appellate court affirmed the trial court's order granting the State's motion to dismiss defendant's amended petition. 2016 IL App (4th) 140760, ¶ 25. This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 22                                    ANALYSIS

¶ 23    On appeal, defendant contends that the trial court erred in dismissing his postconviction petition without an evidentiary hearing because he established a substantial showing of a constitutional violation. Specifically, defendant argues that he was denied his right to effective assistance of counsel when he entered into a fully negotiated guilty-plea agreement in reliance on his plea counsel's erroneous advice that he would only serve 50% of his 18-year sentence if he pleaded guilty to the armed habitual criminal charge.

¶ 24    When, as here, a postconviction petition reaches the second stage, the circuit court reviews the petition and any accompanying documents to determine whether the petitioner has made " 'a substantial showing of a constitutional violation.' " *People v. Tate*, 2012 IL 112214, ¶ 10 (2012) (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). Upon a substantial showing of a constitutional violation, the petition must be advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2012); *Tate*, 2012 IL 112214, ¶ 10. Upon no showing, the petition should be dismissed. *Tate*, 2012 IL 112214, ¶ 10. We review *de novo* the dismissal of a postconviction petition without an evidentiary hearing. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 25       The sixth amendment guarantees a criminal defendant the right to effective assistance of trial counsel at all critical stages of the criminal proceedings, including the entry of a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 44 (citing *Missouri v. Frye*, 566 U.S. 134, 140 (2012)). A claim that a defendant was denied his constitutional right to effective assistance of counsel is generally governed by the familiar two-pronged test established in *Strickland*, 466 U.S. 668. Under *Strickland*, a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance. *Hughes*, 2012 IL 112817, ¶ 44.

¶ 26       The *Strickland* standard also applies to a claim that trial counsel was ineffective during the guilty-plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of *Strickland* remains the same under *Hill* for guilty-plea defendants. *Hill*, 474 U.S. at 58-59. For purposes of the second prong, however, a guilty-plea defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. This court follows *Hill*'s application of *Strickland* when a guilty-plea defendant raises a claim of ineffective assistance of counsel. *People v. Valdez*, 2016 IL 119860, ¶ 29; *Hughes*, 2012 IL 112817, ¶ 63; *People v. Hall*, 217 Ill. 2d 324, 335 (2005); *Rissley*, 206 Ill. 2d at 457. We have also held that "[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice" for purposes of an ineffectiveness claim. *Valdez*, 2016 IL 119860, ¶ 29 (citing *Hughes*, 2012 IL 112817, ¶ 64, and *Hall*, 217 Ill. 2d at 335).

¶ 27       Here, the State does not contest defendant's argument that his trial counsel's performance was objectively unreasonable, the requisite showing for the first prong of *Strickland*. The applicable sentencing statute effectively requires a defendant convicted of the offense of armed habitual criminal to serve 85% of his sentence (730 ILCS 5/3-6-3(a)(2)(ii) (West 2012)), but defendant alleges in his petition that his counsel erroneously advised him that he would serve only 50% of his sentence for that offense. At this stage of review, we must take as true all well-pleaded facts in the petition and supporting documentation. *People v. Pitsonbarger*, 205 Ill. 2d 444, 467 (2002). We agree with defendant that there is no objectively reasonable justification for counsel's erroneous advice on this straightforward and readily verifiable sentencing information. See, *e.g.*, *Padilla v. Kentucky*, 559 U.S. 356, 369

(2010) (explaining the need for trial counsel to give "correct advice" to a defendant on a "truly clear" consequence of pleading guilty). Accordingly, we accept the State's implicit concession that defendant's allegations in his petition are sufficient to satisfy the first prong of *Strickland*.

¶ 28    We next address the prejudice prong, the primary focus of defendant's argument before this court. As we have explained, *Hill* instructs that "[t]o establish prejudice in the guilty-plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Valdez*, 2016 IL 119860, ¶ 29 (quoting *Hill*, 474 U.S. at 59).

¶ 29    Although acknowledging that our decisions have relied on the *Strickland* standard as applied by the United States Supreme Court in *Hill*, defendant nonetheless contends that "[i]n Illinois, post-conviction petitioners alleging ineffective assistance of guilty plea counsel must go beyond what *Hill v. Lockhart* requires." Citing *Hall*, 217 Ill. 2d at 335, and *Rissley*, 206 Ill. 2d at 459-60, defendant notes that this court has also required a guilty-plea defendant to raise a claim of innocence or state a plausible defense that could have been raised at trial to satisfy the prejudice prong.

¶ 30    Defendant contends that our holdings in *Hall* and *Rissley*, requiring a claim of actual innocence or a plausible trial defense, should be limited to ineffective assistance claims related to trial strategy but should not apply to a case like his, when a defendant pleads guilty based on counsel's affirmative misrepresentation on the consequences of the plea. He further argues that an evidentiary hearing is necessary because his claim depends on matters outside the record, specifically his counsel's sentencing advice. For support, defendant cites the appellate court's decisions in *Stewart* and *Kitchell*. He also relies heavily on a decision issued by the United States Supreme Court while this appeal was pending, *Lee v. United States*, 582 U.S. ___, 137 S. Ct. 1958 (2017).[2] Defendant argues that *Lee* "strongly

---

[2]*Lee* was issued after defendant filed his opening brief in this appeal but before the State filed its appellee brief. The State addresses *Lee* in its brief. Defendant's reply brief is devoted almost entirely to discussing the impact of *Lee* on his claims here.

supports his argument that a static prejudice standard cannot be used to adjudicate all claims of ineffective assistance of guilty plea counsel."

¶ 31     The State argues that *Lee* provides no basis for overturning this court's precedent or reversing the appellate court's judgment in this case. Instead, the State maintains that *Lee* reaffirms this court's "bare allegation rule" but otherwise should be limited to cases involving deportation that include sufficient factual allegations that the possibility of deportation was the determinative factor in the defendant's guilty plea.

¶ 32     *Lee* represents the Supreme Court's most recent discussion of whether guilty-plea counsel's allegedly deficient performance prejudiced a defendant for purposes of an ineffective assistance claim. Necessarily, *Lee* instructs our analysis of the issue presented here.

¶ 33     In *Lee*, the United States Supreme Court reviewed the ineffective assistance claim of a defendant who pleaded guilty to an aggravated felony that subjected him to mandatory deportation. Lee's counsel erroneously informed him that his plea would not result in his deportation. Reaffirming the *Hill* standard for guilty-plea cases, the Court explained that "when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Lee*, 582 U.S. at ___, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S. at 59).

¶ 34     Especially relevant to this case, *Lee* distinguished an ineffective assistance claim involving a matter of trial strategy related to a defendant's acquittal prospects from a claim involving a defendant's understanding of the consequences of pleading guilty. The first category requires a showing that a defendant would be "better off going to trial" absent his counsel's deficient performance by establishing that he would have been acquitted or had a viable defense. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1965-66.

¶ 35     In contrast, *Lee* rejected the acquittal or viable defense requirements for the second category—an ineffective assistance claim related to a defendant's understanding of the consequences of pleading guilty. As the Court instructed:

"Not all errors, however, are [related to a defendant's prospects of acquittal]. Here Lee knew, correctly, that his prospects of acquittal at trial were grim, and his attorney's error had nothing to do with that. The error was instead one that affected Lee's understanding of the consequences of pleading guilty. The Court confronted precisely this kind of error in *Hill*. [Citation.] Rather than asking how a hypothetical trial would have played out absent the error, the Court considered whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial. The Court rejected the defendant's claim because he had 'alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty.' [Citation.]" *Lee*, 582 U.S. at ___, 137 S. Ct. at 1965.

Although a defendant without a viable defense is highly likely to lose at trial and rarely could establish prejudice from accepting a favorable plea deal, the Court concluded that the probability of success at trial should not be the dispositive factor. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966.

¶ 36    Instead, *Lee* instructs that when a defendant's claim of ineffective assistance of plea counsel involves a consequence of pleading guilty, it is appropriate to compare the consequences of a defendant's conviction following a trial to the consequences of the defendant entering the guilty plea. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966. As the Court explained:

"When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years." *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966-67.

Applying those considerations to Lee's case, the Court concluded that Lee adequately demonstrated a reasonable probability that he would have rejected the plea if he had been properly advised that his plea would lead to his mandatory deportation. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1967.

¶ 37    In reaching that conclusion, the Court recognized that Lee's case presented "unusual circumstances." *Lee*, 582 U.S. at ___, 137 S. Ct. at 1967. The Court

observed that Lee and his trial counsel testified at the evidentiary hearing that Lee would have proceeded to trial if he had known about the deportation consequences. During the plea colloquy, Lee replied affirmatively when the trial court asked whether his decision to plead guilty was affected by the possibility that his conviction could result in his deportation. When the court asked how it affected his decision to plead, Lee responded " 'I don't understand.' " *Lee*, 582 U.S. at ___, 137 S. Ct. at 1968. Only after Lee's counsel assured Lee that the judge's statement was a " 'standard warning' " was Lee willing to proceed with his guilty plea. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1967-68.

¶ 38    The Court emphasized the severity of the consequences of deportation. These consequences were especially true for Lee, who had lived in the United States for almost three decades, had two established businesses in Tennessee, and was the only family member in the United States who could care for his elderly parents—both naturalized American citizens. There was no evidence that Lee had any connections to South Korea, his native country, or that he had ever returned there since leaving as a child. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1968.

¶ 39    The Court in *Lee* also addressed the government's claim that *Padilla*, 559 U.S. at 372, required Lee to show that a decision to reject the plea "would have been rational under the circumstances." The government argued that Lee could not make that showing because going to trial would have only delayed the inevitable consequence of mandatory deportation. Rejecting the government's argument, the Court concluded it would not be irrational for Lee to reject the plea because he still had a chance, however remote, to avoid deportation by going to trial. The Court explained that Lee had strong connections to the United States, the consequence of taking a chance at trial was not markedly harsher than pleading guilty, and it was apparent that deportation was the determinative issue for Lee. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1968-69.

¶ 40    This court's jurisprudence is consistent with *Lee*. We similarly follow *Hill*'s application of the *Strickland* test to claims of ineffective assistance of guilty-plea counsel. *Valdez*, 2016 IL 119860, ¶ 29; *Hughes*, 2012 IL 112817, ¶ 63; *Hall*, 217 Ill. 2d at 335; *Rissley*, 206 Ill. 2d at 457. Recently, we held that " 'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances' " when the claim involved counsel's alleged

failure to advise a defendant on the deportation consequences of pleading guilty. *Valdez*, 2016 IL 119860, ¶ 29 (quoting *Padilla*, 559 U.S. at 372); see also *Hughes*, 2012 IL 112817, ¶ 65 (applying same *Padilla* standard).

¶ 41       *Lee* similarly considered *Padilla*'s "rational under the circumstances" standard. See *Lee*, 582 U.S. at ___, 137 S. Ct. at 1968-69 (discussing and rejecting the government's claim that Lee failed to satisfy *Padilla*). As *Lee* explained, when a defendant does not have a viable defense strategy or chance of acquittal, "[t]he decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966. In other words, *Lee* requires a consideration of the specific circumstances of each case when assessing a guilty-plea defendant's ineffective assistance claim based on his understanding of the consequences of pleading guilty.

¶ 42       This comports with our approach in *Valdez* and *Hughes*. Like *Lee*, both *Valdez* and *Hughes* involve ineffective assistance claims related to a defendant's understanding of the consequences of pleading guilty.

¶ 43       *Valdez* addressed a defendant's claim that he was prejudiced by his counsel's failure to advise him properly on the deportation consequences of pleading guilty. *Valdez*, 2016 IL 119860, ¶¶ 29-32. We determined that Valdez was not prejudiced by his counsel's deficient advice because the record established that the trial court provided the relevant information under section 113-8 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-8 (West 2012)). *Valdez*, 2016 IL 119860, ¶¶ 31-32.

¶ 44       Similarly, *Hughes* addressed a defendant's claim that he was prejudiced by his counsel's failure to advise him properly on the potential for the State to seek his commitment as a sexually violent person if he pleaded guilty. *Hughes*, 2012 IL 112817, ¶¶ 63-66. After explaining that resolution of the prejudice inquiry "will turn on the facts of a particular case," we concluded that Hughes's "mere assertion" that he would not have pleaded guilty if properly advised by counsel was insufficient to establish prejudice. *Hughes*, 2012 IL 112817, ¶¶ 65-66.

¶ 45       In comparison to *Valdez* and *Hughes*, this court has taken a different approach when reviewing an ineffective assistance claim related to a defendant's defense strategy or chance of acquittal, *i.e.*, a defendant's prospects at trial. In that type of

case, this court requires a claim of innocence or a plausible defense to establish prejudice. See *Hall*, 217 Ill. 2d at 335-36 (requiring claim of innocence or plausible defense to support an ineffectiveness claim based on plea counsel's allegedly erroneous advice that the defendant had no defense to the charge of aggravated kidnapping); *Rissley*, 206 Ill. 2d at 459-62 (requiring claim of innocence or plausible defense to support an ineffectiveness claim based on plea counsel's alleged failure to investigate a potential insanity defense and counsel's misunderstanding of the procedures used in a capital case).

¶ 46 We agree with defendant that the innocence or plausible defense standard from *Hall* and *Rissley* is inapplicable here. See *Lee*, 582 U.S. at ___, 137 S. Ct. at 1965 (distinguishing guilty-plea counsel's error related to a defendant's chance of acquittal or prospects at trial with plea counsel's error related to a defendant's understanding of the consequences of pleading guilty). Defendant alleges that he was prejudiced by his counsel's failure to advise him correctly that he was required to serve 85% of his sentence. His allegation involves his understanding of the consequence of his guilty plea, the type of claim considered in *Lee* and this court's decisions in *Valdez* and *Hughes*.

¶ 47 While we agree with defendant that *Hall* and *Rissley* do not apply to his claim, our inquiry is not over. Neither *Lee* nor any decision from this court allows an ineffective assistance claim to satisfy the requisite prejudice prong based solely on the bare allegation that the defendant would have rejected the plea if his guilty-plea counsel had provided accurate advice. Indeed, this court recently reaffirmed our prior consistent holdings that "[a] conclusory allegation that a defendant would not have pleaded guilty and would have demanded a trial is insufficient to establish prejudice" for purposes of the *Strickland* analysis. *Valdez*, 2016 IL 119860, ¶ 29 (citing *Hughes*, 2012 IL 112817, ¶ 64, and *Hall*, 217 Ill. 2d at 335). *Lee* similarly concluded that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at ___, 137 S. Ct. at 1967. To the extent the appellate court's decisions in *Stewart* and *Kitchell* conflict with these decisions, they are overruled.

¶ 48 Although *Lee* was not decided when we issued our decision in *Valdez*, nothing in *Lee* suggests that we should reconsider our analysis. If anything, *Lee* bolsters our

determination in *Valdez* that we must consider the relevant surrounding circumstances to assess prejudice. See *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966 (for purposes of analyzing an ineffective assistance claim, a defendant's decision whether to plead guilty "involves assessing the respective consequences of a conviction after trial and by plea"). As we explained in *Valdez*, for a guilty-plea defendant to obtain relief on a claim that he relied on his counsel's erroneous advice about a consequence of his plea, the defendant " 'must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Valdez*, 2016 IL 119860, ¶ 29 (quoting *Padilla*, 559 U.S. at 372).

¶ 49    Here, defendant's allegation in his petition, standing alone, is insufficient to establish prejudice. Pursuant to *Lee* and this court's decisions in *Valdez* and *Hughes*, we must examine the circumstances surrounding his plea. Defendant was charged with (1) being an armed habitual criminal, a Class X felony with a sentencing range of 6 to 30 years' imprisonment (720 ILCS 5/24-1.7(b) (West 2012); 730 ILCS 5/5-4.5-25 (West 2012)), and (2) home invasion, a Class X felony that included a mandatory 15-year firearm enhancement for a total sentencing range of 21 to 45 years' imprisonment (720 ILCS 5/19-6(c) (West 2012)). With defendant's significant criminal history, it is entirely possible that he would have received sentences on the higher end of those ranges. And there is little doubt that defendant would have been convicted of both offenses—defendant, a convicted felon, was apprehended by police officers inside the victims' home after he pointed a handgun at the officers.

¶ 50    By pleading guilty, however, defendant received only a single Class X felony conviction for armed habitual criminal with a mid-range sentence of 18 years' imprisonment. Most critically, in exchange for defendant's pleading guilty, the State agreed to nol-pros the home invasion charge. Defendant, therefore, avoided a conviction for home invasion, a Class X felony that included a mandatory 15-year firearm enhancement, for a sentencing range of 21 to 45 years' imprisonment. Given the nature of his crime and his criminal history, defendant most likely would have received a sentence on the higher end of that range. Indisputably, any sentence on an armed violence conviction would have been greater than the 18-year sentence defendant received for armed habitual criminal by pleading guilty. See *Lee*, 582 U.S. at ___, 137 S. Ct. at 1966 (explaining that a defendant's decision to plead

guilty "involves assessing the respective consequences of a conviction after trial and by plea").

¶ 51    Moreover, unlike the defendant in *Lee*, nothing in defendant's plea colloquy demonstrates that his primary focus when pleading guilty was serving 50% of his sentence. See *Lee*, 582 U.S. at ___, 137 S. Ct. at 1968 (concluding, in relevant part, that Lee's responses on deportation consequences during the plea colloquy demonstrated that he placed paramount importance on avoiding deportation). In addition, defendant denied on the record that he was promised anything during the plea negotiations.

¶ 52    Based on these circumstances, we conclude that defendant has failed to establish the requisite showing of prejudice because he has not shown that a decision to reject his plea bargain would have been rational under the circumstances of his case. *Valdez*, 2016 IL 119860, ¶ 29; *Hughes*, 2012 IL 112817, ¶¶ 65-66. Without the requisite substantial showing of a constitutional violation, defendant's postconviction petition is not entitled to an evidentiary hearing.

¶ 53    In closing, we acknowledge the inherent challenge of successfully raising a claim of ineffective assistance of guilty-plea counsel. But we necessarily reject defendant's implicit assertion that *Lee* lowered the threshold for establishing prejudice when the ineffective assistance claim involves a consequence of pleading guilty. *Lee* expressly reaffirmed "*Strickland*'s high bar" and recognized society's strong interest in the finality of convictions based on guilty pleas. *Lee*, 582 U.S. at ___, 137 S. Ct. at 1967. Our holding in this case is consistent with those principles.

¶ 54                                    CONCLUSION

¶ 55    For these reasons, we affirm the judgments of the appellate and circuit courts. Defendant's allegations in his postconviction petition failed to establish a substantial showing of a constitutional violation, and his petition was properly dismissed without an evidentiary hearing.

¶ 56    Affirmed.