2022 IL App (2d) 210371-U
No. 2-21-0371
Order filed August 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1637 |
| DEANTE L. HOUSE, | ) ) ) | Honorable Charles E. Petersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly denied defendant's motion to withdraw his guilty plea alleging that plea counsel was ineffective for misadvising him that he would receive double the sentencing credit for the 1052 actual days he spent in pretrial custody. First, the trial court properly found defendant's claim of improper advice incredible, as defendant repeatedly acknowledged at the plea hearing that he would receive 1052 days' credit. Second, defendant could not show prejudice because, even though he claimed he would have gone to trial if he had known he would receive only 1052 days' credit, such a decision would not have been rational given the favorable plea agreement.

¶ 2    Per a plea agreement, defendant, Deante L. House, was convicted of unlawful possession

of heroin with the intent to deliver (720 ILCS 570/401(a)(1)(B) (West 2016)) and sentenced to 9½

years' imprisonment with credit for 1052 days served.[1] Defendant moved to withdraw his guilty plea, arguing that Greg Walker, his plea counsel, misadvised him about the amount of credit he would receive. The trial court denied the motion. On appeal, defendant reasserts that Walker misadvised him about sentencing credit and that the court erred in denying his motion to withdraw his plea. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4      On September 16, 2016, defendant was driving from Chicago to Wisconsin when the police stopped him. The police arrested him for driving with a suspended license, and an inventory search of his car uncovered various drugs. Defendant admitted to the police that he knew the drugs were in the car and that he was being paid to transport them. Based on these facts, the State charged defendant with six offenses: (1) unlawful possession of methamphetamine (720 ILCS 646/60(b)(3) (West 2016)), (2) manufacturing or delivering methamphetamine (*id.* § 55(a)(2)(C)); (3) unlawful possession of heroin (720 ILCS 570/402(a)(1)(B) (West 2016)), (4) unlawful possession of heroin with the intent to deliver (*id.* § 401(a)(1)(B)), (5) unlawful possession of cocaine (*id.* § 402(a)(2)(B)), and (6) unlawful possession of cocaine with the intent to deliver (*id.* § 401(a)(2)(B)).

¶ 5      The court set bail and released defendant on bond on April 2, 2017. While out on bond, defendant was arrested in Wisconsin for an offense committed before the offenses here. The Wisconsin court placed him on electronic home monitoring. Defendant had permission to leave Wisconsin only to attend court in Illinois on this case. On April 3, 2018, the State moved to revoke

_____

[1]As charged, this offense occurs when a defendant possesses with the intent to deliver "100 grams or more but less than 400 grams of a substance containing heroin." *Id.*

defendant's bond because defendant committed new offenses in Wisconsin in March 2018. The trial court increased defendant's bail. The court also directed the Wisconsin court not to release defendant unless Kane County sheriff's deputies were there to take him into custody on the bail increase.

¶ 6    On August 31, 2018, defendant was released from custody in Wisconsin and remanded to the custody of the Kane County sheriff.

¶ 7    Defendant was still in custody on October 8, 2020, when the parties presented a plea agreement to the trial court. After a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), the State informed the court that defendant would plead guilty to unlawful possession of heroin with the intent to deliver, a Class X felony (720 ILCS 570/401(a)(1)(B)). The State specified that the sentencing range for this offense was 9 to 40 years' imprisonment (*id.*) and must be served at 75% (730 ILCS 5/3-6-3(a)(2)(v) (West 2016)). Defendant and the State agreed that, in return for his guilty plea, defendant would be sentenced to 9½ years' imprisonment, the remaining five charges would be dismissed, and defendant would "receive credit for 1,048 days that he has served in custody." The State explained that the 1048 days would consist of "969 days in the Kane County jail" and "an additional 79 days served in the LaCrosse [*sic*] County, Wisconsin jail." Moreover, defendant would be assessed various fines and fees and "receiv[e] the financial credit *** for the time that he served in custody, as well."

¶ 8    After the State outlined the plea agreement's terms, Walker asked the trial court for time to talk to the State. After that discussion, the State informed the court that "we asked to pass the case to recalculate the credit that [defendant] would be receiving." The State continued, "[D]efendant would be receiving credit for a total of 1,052 days in custody. *** He's receiving credit for 973 days served in the Kane County jail, and he's receiving credit for 79 days served in

LaCrosse [*sic*] County, Wisconsin jail." The court asked Walker if that was correct, and Walker agreed that it was. The court also asked defendant, "[T]hat's your understanding, sir?" Defendant replied, "Yes, sir, Your Honor." The State then computed the monetary credit defendant would receive based on his days served. The court asked Walker if the State's figure was consistent with his understanding of the agreement, and Walker said it was.

¶ 9    The court then had the following exchange with defendant:

"THE COURT: [Defendant], is that your understanding of the terms of the agreement?

THE DEFENDANT: Your Honor, yes. I'm just making sure that the credit was day-for-day.

THE COURT: All right. Now, is that—

MR. WALKER: 1,052 actual days.

THE COURT: That's what it's been represented.

THE DEFENDANT: Credit for day-for-day, right?

THE COURT: Yeah. Correct?

THE DEFENDANT: All right.

THE COURT: Correct?

MR. WALKER: Yes, sir.

MR. MERKEL [(ASSISTANT STATE'S ATTORNEY)]: Judge, he's receiving credit for 1,052 actual days. His sentence will be served at 75 percent. I want to make sure the defendant is not expecting that it's served at 50 percent because the sentence itself will be served at 75 percent.

THE COURT: We're going to talk about that.

You understand that, right, sir?

THE DEFENDANT: Correct, sir.

THE COURT: Okay. Very well."

¶ 10    The trial court then asked defendant various questions to ascertain whether his plea was being made knowingly and voluntarily. Specifically, the court determined that defendant (1) had no difficulty reading or understanding English, (2) did not suffer from any physical or mental disability that would affect his ability to understand the plea proceedings,[2] (3) had enough time to discuss the terms of the agreement with Walker, (4) understood the sentencing range he faced on the charge to which he was pleading guilty, and (5) understood the maximum fines and costs that the court could impose. Defendant also assured the court that he knew that, by pleading guilty, he was giving up his right to insist on a bench or jury trial where he could cross-examine the State's witnesses, call his own witnesses, and testify on his own behalf. Defendant affirmed that he had signed a document entitled "Plea of Guilty" in which he acknowledged the charge to which he was pleading guilty, "the imposition of a specific sentence," and the rights he was relinquishing. The signed form also indicated that the sentencing hearing would take place instanter.

¶ 11    The trial court's sentencing order, entered on the day of the plea, reflected a sentence of 9½ years' imprisonment, and his "[c]redit for time served" was "1052 [a]ctual days." Defendant's signature was at the bottom of the document. The "Financial Sentencing Order," which defendant also signed the same day, reflected that defendant received credit for 1052 days of time served.

_____

[2]Defendant advised the court that he suffered from diabetes but took medication for it and was not undergoing a diabetic reaction that would affect his understanding of the plea proceedings.

¶ 12    The trial court then admonished defendant about the collateral consequences of pleading guilty, such as possible deportation, extended-term sentencing, and potential problems with obtaining employment.  The court confirmed that no one had induced defendant's plea by threats or by making promises beyond the plea agreement.  The court then heard a factual basis for the guilty plea.[3]  The State recited that an Illinois state trooper stopped defendant for speeding on Interstate 90.  The trooper smelled the odor of burnt cannabis emanating from the vehicle.  The trooper eventually searched the vehicle, and found in the trunk a substance that later tested positive for the presence of heroin.  The amount of heroin exceeded what one would possess for personal consumption.  Also, they found about $3000 in cash on defendant's person.  During an interview with officers, defendant admitted that he knew that there were drugs in the car.  He further admitted that he was paid to transport the drugs from Wisconsin to Chicago.

¶ 13    After the State finished with the factual basis, the trial court inquired about defendant's criminal history. The State informed the court that defendant's history included two convictions of unlawful delivery of a controlled substance, and one conviction each of aggravated fleeing and eluding, bail jumping, and obstructing identification.  The court then accepted defendant's plea,

---

[3]While the State was reciting the factual basis, defendant personally objected, and the trial court asked Walker to speak with him.  After consulting with defendant, Walker explained to the court that defendant was concerned that the factual basis would become a public record.  Defendant was worried that details of the crime could threaten him and his family's safety.  The court invited Walker and the State to confer and try to agree on a factual basis.  After Walker and the State had their discussion, the State continued with the factual basis, which presumably had limited detail per defendant's request.

finding it knowingly and voluntarily entered. The court imposed the agreed-upon sentence and advised defendant about his right to appeal.

¶ 14 Before concluding, the trial court asked defendant, "Now, do you have any questions about what's happened here today?" Defendant said that he did, and the court asked defendant to speak to Walker. After they spoke, the court had the following exchange with defendant:

"THE DEFENANT: Your Honor, I understand the time that I'm pleading-out to is 75 percent, but the time that I'm sitting here is day-for-day, right?

THE COURT: That's what the calculation for your credit was.

THE DEFENDANT: Okay, okay. I just—that's confusing me.

THE COURT: I understand. They gave you X number of days against your sentence.

THE DEFENDANT: Okay. Thank you, Your Honor.

THE COURT: Is that correct, Mr. Merkel?

MR. MERKEL: Judge, he's receiving credit for 1,052 actual days. I can't be any more—I don't know that there's any way to put it any more clearly than that, Judge.

THE COURT: Does that answer your question, sir?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: All right. Very well.

Anything further?

MR. WALKER: No, sir.

THE DEFENDANT: No, sir."[4]

---

[4]Defendant immediately added that he had a drug problem. Walker interjected, asking the

¶ 15    On October 11, 2020, three days after defendant pleaded guilty, he filed by mail a motion to withdraw his guilty plea.[5]  Defendant argued, among other things, that Walker was ineffective because he did not properly advise defendant about his sentencing credit.  Defendant claimed that Walker told him "if [he] plea out [he] be free an [*sic*] a few month's [*sic*] because the State would credit [him] day for day.  [F]or all the time have served in custody already."

¶ 16    The trial court appointed conflict counsel.  Counsel twice amended defendant's motion to withdraw the guilty plea and filed a certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).  As relevant here, the amended motion alleged that Walker was ineffective "for not correctly informing [defendant] of how much time remaining he had to serve."  Given a "lack of meaningful communication between defendant and [Walker]," defendant "did not have a clear understanding of the ramifications of his plea of guilty and [the plea] was therefore not knowingly and voluntarily made."

¶ 17    At the hearing on the motion, defendant testified:

> "[Walker] told me that basically that I was gonna get—he said I get day-for-day if I take [the plea agreement] and all the time that I am sitting here [in jail], which he said he added it up, that I was gonna get—I had to think a-thousand-and-like-50-some days.

court to recommend that defendant serve his sentence where there was a drug treatment facility. The court replied that it did not control where the DOC would place defendant.

[5]Defendant's motion to withdraw was filed when mailed.  *People v. Shines*, 2015 IL App (1st) 121070, ¶ 31 ("Under the mailbox rule, pleadings, including posttrial motions [citation], are considered timely filed on the day they are placed in the prison mail system by an incarcerated defendant [citation].").

He said I was gonna get day-for-day and it was gonna be 2,000-some days. And then if I take it, I get up out of here."

Defendant continued:

"And [Walker] was like, you know, your family can't come up with the money to bond you out, so this is the best way. You will be home in maybe eight, nine months at the most. And, you know, it's worth just getting it over with. I mean, you been going through this for a long time.

Basically, [Walker] put the burden on me saying that my family—you know, I am a burden to my family—you know, I am a burden to my family and I just need to get it over with so that's what I did. I took the time because that's what he told me. He said you gonna get day-for-day."

¶ 18 Defendant testified that, based on what Walker told him, he pleaded guilty to unlawful possession of heroin with the intent to deliver in exchange for 9½ years' imprisonment and "day-for-day credit." When asked if that "day-for-day credit" amounted to 1052 days, defendant replied, "[Walker] said it gonna be 2,000-some days." So, defendant's "understanding was that [he] would get double the credit of [his] 1,052 days, that [he] would get 2,104 days." "And that was because that's what Mr. Walker told [him]." Counsel asked, "But the paperwork said 1,052; correct?" Defendant responded, "1,000-something, yeah." Defendant asserted, "Once I pled guilty [Walker] told me *** that I will have to do probably another ten months or so at the most and I would be home." Defendant stated that he "relied on what [Walker] told [him] as far as how much time [he] would have left to serve when [he] decided to take the plea." When defendant arrived at the Department of Corrections (DOC), he was told that his release date was December 21, 2024—far beyond the 10 additional months Walker said he would have to serve. Defendant assured the trial

court that, if he had known that he would not be released until December 2024, he would not have pleaded guilty.

¶ 19    On cross-examination, defendant remembered asking the trial court if "the credit is day-for-day" and alerting Walker that the correct calculation of days was 1052, not 1048. Moreover, he remembered Walker telling him that it was "1,052 actual days" that he was "gonna get credit for." Defendant also remembered the State telling the trial court that defendant would get credit for 1052 days. Defendant, however, claimed that he "misunderstood" the credit he was owed. When asked if anyone ever told him during the plea proceedings that he was going to receive over 2000 days of credit, defendant responded, "[Walker] was whispering [that] in my ear." Defendant agreed that he "never said anything" when he was told "multiple times [by] the [trial court] and [by the State]" that he was "only getting credit for 1,052 days."

¶ 20    After defendant testified, the State moved for a directed finding. The court took the motion under advisement.

¶ 21    On June 21, 2021, the trial court denied defendant's motion to withdraw his plea. In doing so, the court noted that "when discussions were had that [defendant] had to do 9½ years [in the DOC] with credit for 1,052 days, he did not object nor complain nor did he state that he thought he had to only serve another 8-10 months." "[Defendant] had every opportunity to raise the alleged statement he attribute[d] to Attorney Walker but did not do so." It "strain[ed] credulity" for defendant to claim that Walker gave that erroneous advice where defendant did not interject to challenge the State's contrary assertions about sentencing credit as defendant had interjected over the factual basis.

¶ 22    In a later order filed June 25, 2021, the court granted the State's motion for a directed finding, reaffirming that the record rebutted defendant's claim that he believed he would receive

2104 days of credit. The court observed that defendant's only personal objection concerned the factual basis.

¶ 23 Defendant filed a notice of appeal on July 7, 2021, and an amended notice of appeal on July 26, 2021.

¶ 24                                    II. ANALYSIS

¶ 25 At issue in this appeal is whether the trial court erred in denying defendant's motion to withdraw his guilty plea. However, before we consider that issue, we briefly address our jurisdiction.

¶ 26                                   A. Jurisdiction

¶ 27 "[A]n appeal is perfected by the timely filing of a notice of appeal, and it is this step which vests the appellate court with jurisdiction." *In re J.T.*, 221 Ill. 2d 338, 346 (2006). Under Illinois Supreme Court Rule 606(b) (eff. July 1, 2017), a notice of appeal is timely if it is filed "within 30 days after the entry of the final judgment appealed from or[,] if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." The final judgment in a criminal case is the sentence. *People v. Caballero*, 102 Ill. 2d 23, 51 (1984). A motion to withdraw a plea is timely if it is filed within 30 days after sentencing. Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 28 Here, within 30 days after sentencing, defendant moved to withdraw his guilty plea. The trial court appointed counsel, who filed an amended motion to withdraw the guilty plea. The trial court denied the motion, and defendant filed a timely notice of appeal in July 2021.

¶ 29 The record, however, contains a transcript of a proceeding dated December 7, 2021—five months after defendant filed his notice of appeal. In that proceeding, an assistant public defender notes that she was appointed to represent defendant on his *pro se* motion to withdraw the guilty

plea and that she was seeking a date to present her amended motion to withdraw the plea. The discussions on the record did not disclose the substance of the motion or the date counsel filed it. As requested, the court set a date for appointed counsel to present her amended motion. Because the transcript appeared to reference a motion to withdraw that defendant filed after appealing to this court, we asked the parties to address our jurisdiction, given that the motion might have raised an issue under Illinois Supreme Court Rule 472 (eff. May 17, 2019).

¶ 30     According to the supplemental briefs and record the parties filed, the transcript erroneously dated the proceeding as December 17, *2021*, rather than December 17, *2020*. We agree that the transcript was erroneously dated. Accordingly, we conclude that the transcript does not place our jurisdiction in question.

¶ 31     That said, in the supplemental record is a *pro se* motion to correct the mittimus that defendant mailed to the trial court and the State on December 30, 2021. In that motion, defendant asserted that he "entered a plea agreement *** from [his] understanding of 9½ years in [the DOC] with 3 year's [*sic*] of M.S.R. and credit for # 1,052 day's [*sic*] on that sentence." Defendant asked the court to correct the mittimus because the in-custody dates were incorrect. Defendant signed the motion, verifying that:

> "Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure [(735 ILCS 5/1-109 (West 2020))], the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true."

¶ 32     We agree with the parties that this motion does not impact our jurisdiction (see Ill. S. Ct. R. 472(a)(3), (d) (eff. May 17, 2019) (a defendant may file a motion to correct presentence custody

credit, and such motion will not impact a pending appeal). However, we are concerned that defendant verified that everything contained in his *pro se* motion was true, including that he knew he would receive only 1052 days, not 2104 days, of sentencing credit against his 9½ sentence. While that admission could end our consideration of the merits of this appeal, we choose to address the merits.

¶ 33                                    B. Motion to Withdraw the Guilty Plea

¶ 34     "When a trial court reaches the merits of a motion to withdraw a guilty plea, the decision to grant or deny that motion 'rests in the sound discretion of the [trial] court and, as such, is reviewed for an abuse of discretion.' " *People v. Glover*, 2017 IL App (4th) 160586, ¶ 29 (quoting *People v. Hughes*, 2012 IL 112817, ¶ 32). A trial court abuses its discretion when its ruling is so arbitrary or unreasonable that no reasonable person would adopt the court's view. *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 14.

¶ 35     "One basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice prior to entering the plea." *Glover*, 2017 IL App (4th) 160586, ¶ 39. However, while " '[a] defendant may enter a guilty plea because of some erroneous advice by counsel, *** that fact alone does not destroy the voluntary nature of the plea.' " *Id.* (quoting *People v. Cunningham*, 286 Ill. App. 3d 346, 349 (1997)). Rather, " 'it must be shown that defendant was denied the effective assistance of counsel.' " *Id.* (quoting *Cunningham*, 286 Ill. App. 3d at 349).

¶ 36     To establish that counsel was ineffective in such a circumstance, a defendant must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Valdez*, 2016 IL 119860, ¶¶ 13-14. Under the first prong of that test, a defendant must demonstrate that his attorney's performance " 'fell below an objective standard of reasonableness.' " *Id.* ¶ 14 (quoting *Strickland*, 466 U.S. at 688). Overcoming *Strickland*'s high bar is no easy task, as judicial

scrutiny of counsel's performance is highly deferential. *Hughes*, 2012 IL 112817, ¶ 63. To satisfy the second prong, a defendant must establish that he was prejudiced because of counsel's deficient performance. *Id.* Prejudice in guilty-plea proceedings is evaluated in light of the surrounding circumstances. *People v. Brown*, 2017 IL 121681, ¶ 48. To establish prejudice based on a claim that he pleaded guilty based on his counsel's erroneous advice, the defendant must show that a decision to reject the plea offer would have been rational under the circumstances. *Id.*

¶ 37 The defendant bears the burden of establishing both parts of the *Strickland* test. *People v. Jones*, 219 Ill. App. 3d 301, 305 (1991). "[F]ailure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim." *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). Similarly, claims that the record rebuts cannot succeed. *People v. Strickland*, 363 Ill. App. 3d 598, 607 (2006).

¶ 38 Here, in addressing whether counsel was ineffective, we first observe that the parties do not dispute that defendant spent 1052 actual days in pretrial custody. They disagree about whether defendant was told that he would receive double that amount of credit, *i.e.*, 2104 days, toward his sentence. Defendant claims that Walker "told him before his plea hearing that he would receive 'day-for-day' credit for his time spent in pre-plea custody." "This led [defendant] to believe that his time already served—1,052 days—would be doubled, for a total of 2,104 days that would be applied toward his nine-and-one-half year sentence." Defendant continues that "[a]lthough the [State] and the court attempted to clarify matters for [defendant] at the time of his plea, their explanations were deficient, and [defendant] did not enter his guilty plea with an understanding of the amount of pre-sentence credit he was to receive." The State argues that counsel was not ineffective, because "[o]ther than defendant's subjective impression, there is no evidence that [Walker] made *** statement[s] to defendant" that he would receive 2104 days of credit. The

State contends that "even if [we] find that defendant has proven that [Walker] misinformed him, the trial court's admonishments and clarifications by the [State] remedied any potential misunderstanding." We agree with the State.

¶ 39    The record reflects that defendant's guilty plea was knowingly and voluntarily made. The court recited the terms of the plea agreement and explained that defendant would receive 1052 days of sentencing credit. The State, too, asserted that defendant would receive 1052 days of sentencing credit. When defendant asked questions about the amount of credit he would receive and the court and State further explained the sentencing credit, defendant assured the court that he understood. Although defendant had no issue interrupting the plea proceedings to ask that the State provide a less detailed factual basis and alert the court about his drug problem, defendant never at any time during the lengthy plea proceedings interjected that he thought he was going to receive 2104 days of credit.

¶ 40    At the hearing on the motion to withdraw the guilty plea, defendant's testimony was equivocal. When asked whether anyone indicated at the plea hearing that he would receive over 2000 days of credit, defendant replied that Walker "whisper[ed]" as much in his ear during the proceedings. However, defendant admitted that the State told the court that defendant was "receiving credit for 1,052 actual days" and that defendant assured the court that he understood. Defendant explained that he must have "misunderstood" the amount of credit he was due.

¶ 41    That misunderstanding cannot serve as a basis for defendant to withdraw his guilty plea. In the absence of substantial objective proof showing that a defendant's mistaken impressions were reasonably justified, subjective impressions alone are not sufficient grounds on which to vacate a guilty plea. *People v. Hale*, 82 Ill. 2d 172, 176 (1980). The record is devoid of substantial objective proof that defendant was reasonably justified in his belief that he would receive 2104

days of sentencing credit. In denying defendant's motion to withdraw his plea, the trial court specifically found incredible defendant's claim that Walker whispered in his ear during the plea proceeding that he would receive over 2000 days of credit. The court provided sound reasons for that finding, and we find no basis to upset it. The court and the State told defendant multiple times during the plea hearing that he would receive 1052 days of credit; defendant never challenged their positions. Given the lack of substantial objective proof that Walker caused defendant's misunderstanding of his credit, coupled with the trial court's admonishments, we cannot conclude that Walker's representation of defendant was deficient. See *People v. Radunz*, 180 Ill. App. 3d 734, 741 (1989) (trial court's admonishments cannot be ignored).

¶ 42    We also cannot conclude that defendant was prejudiced—in other words, that a decision to reject the plea offer would have been rational under the circumstances. *Brown*, 2017 IL 121681, ¶ 48. *Brown* is instructive on this point. There, the defendant pleaded guilty to a charge of being an armed habitual criminal in exchange for an 18-year sentence and the dismissal of a home invasion charge. *Id.* ¶ 5. Thereafter, the defendant filed a postconviction petition, alleging that his trial counsel was ineffective because, among other things, counsel misinformed the defendant as to how much of his sentence he would have to serve. *Id.* ¶ 15. The defendant alleged "that his counsel's ineffective assistance prejudiced him because he pleaded guilty based on the erroneous belief that he would serve only 50% of his 18-year sentence when he actually must serve 85%, an additional 6 years in prison." *Id.* The defendant claimed that "had he been properly advised on sentencing, he 'would not have accepted the plea and would have taken the case to trial wherein he would have been acquitted.' " *Id.* The State moved to dismiss, the trial court granted the motion, and our supreme court affirmed. *Id.* ¶¶ 18-19, 52. Our supreme court found a lack of prejudice, noting that (1) the defendant most likely would have been convicted of both offenses,

as the police found him in the victims' home; (2) by pleading guilty, the defendant was convicted of only one offense and received a sentence within the middle of the sentencing range; and (3) given the defendant's significant criminal history, he probably would have received lengthy sentences. *Id.* ¶¶ 49-50. Accordingly, the court determined that the defendant was not prejudiced, as rejecting the plea offer would not have been rational under those circumstances. *Id.* ¶ 52.

¶ 43 The same holds true here. Defendant's chances of success at trial were dim, given that (1) he admitted that he knew drugs were in his car and that he was being paid to transport them from Wisconsin to Chicago and (2) a large amount of cash was found on his person. The plea agreement called for defendant to plead guilty to one of six drug charges—unlawful possession of heroin with the intent to deliver—in exchange for which he would receive a sentence only six months longer than the minimum. See 720 ILCS 570/401(a)(1)(B) (West 2016). If defendant had gone to trial, he faced a sentence of up to 40 years on that charge alone. See *id.* Given his substantial criminal history, which included two convictions of unlawful delivery of a controlled substance, a lengthier sentence than what the agreement called for was more than likely. Moreover, by going to trial, defendant would also face conviction on five other serious offenses: (1) unlawful possession of methamphetamine (720 ILCS 646/60(b)(3) (West 2016)); (2) manufacturing or delivering methamphetamine (*id.* § 55(a)(2)(C)); (3) unlawful possession of heroin (720 ILCS 570/402(a)(1)(B) (West 2016)); (4) unlawful possession of cocaine (*id.* § 401(a)(2)(B)); and (5) unlawful possession of cocaine with the intent to deliver (*id.* § 402(a)(2)(B)). In these circumstances, we simply cannot conclude that a decision to reject the plea offer would have been rational. *Brown*, 2017 IL 121681, ¶ 48.

¶ 44 In reaching our conclusion, we find defendant's reliance on *Boyd* unfounded. First, defendant claims that, "[a]s in *Boyd*, the circumstances of this case independently corroborate

[defendant's] assertion that he would not have pled guilty in the absence of plea counsel's erroneous advice." See *Boyd*, 2018 IL App (5th) 140556, ¶ 20 ("[I]f plea counsel gives wrong or incorrect advice, even as to a collateral consequence of the plea, and the defendant relies on that advice in making the decision to plead guilty, the [*sic*] counsel's performance falls below an objective standard of reasonableness and amounts to ineffective assistance."). As noted, the question is not simply whether the defendant would have gone to trial if not for counsel's erroneous advice. *Brown*, 2017 IL 121681, ¶ 48 (standard for determining prejudice is whether a "decision to reject [the] plea bargain would have been rational under the circumstances" (Internal quotation marks omitted.)). Second, *Boyd* is clearly distinguishable. There, "[p]lea counsel's testimony corroborate[d the] defendant's testimony that the possibility of a reduction in his sentence was a major factor in [the] defendant's decision to enter his guilty plea." *Boyd*, 2018 IL App (5th) 140556, ¶ 26. There is no such supporting evidence or testimony in this case from Walker or anyone else.

¶ 45     We also reject defendant's claim that Walker "pressured him into accepting the plea by telling him that he didn't have any other choice, calling him a burden to his family, and claiming that if [*sic*] he would get close to the maximum sentence if he went to trial." Not only does the record reflect that defendant assured the court that he was not forced or threatened to plead guilty, but Walker had a duty to advise defendant what, in his professional opinion, defendant faced if he went to trial. See *People v. Buchanan*, 403 Ill. App. 3d 600, 607 (2010) ("An attorney's honest assessment of a case, when made based on his or her professional experience, cannot be considered misleading.").

¶ 46     For these reasons, we simply cannot conclude that Walker was ineffective. Thus, the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

¶ 47                    III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 49    Affirmed.