**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180746-U

Order filed August 10, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0746 Circuit No. 15-CF-698 |
| DEMARIOUS CLARK, | ) ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Lytton concurred in the judgment.
Justice Wright dissented.

_____

**ORDER**

¶ 1    *Held*:    Defense counsel provided ineffective assistance in failing to raise an issue in the motion to withdraw defendant's guilty plea. Specifically, counsel failed to argue that defendant pled guilty based on his misapprehension that he would be able to withdraw his plea if he was not admitted to the impact incarceration program and that this misapprehension was reasonably justified by counsel's assurances.

¶ 2    Defendant, Demarious Clark, appeals the Peoria County circuit court's denial of his motion to withdraw his guilty plea. Defendant argues that he should be permitted to withdraw his plea because he pled guilty based on plea counsel's assurance that he could withdraw his plea if

he was not admitted into the impact incarceration program. In the event that we find this issue forfeited, defendant argues that defense counsel provided ineffective assistance in failing to raise it. Alternatively, defendant argues that the matter should be remanded for new postplea proceedings and the appointment of new counsel because his plea counsel provided ineffective assistance during the proceedings on his motion to withdraw his guilty plea for failing to present certain evidence and for failing to withdraw. We reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4       Defendant was charged with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2014)) and unlawful possession of a firearm (*id.* § 24-3.1(a)(2)).

¶ 5       Following a Rule 402 conference, defendant entered a fully negotiated guilty plea. Prior to accepting the plea, the court admonished defendant that it had received a proposed order stating that the State was dismissing the charge of unlawful possession of a firearm, and defendant was pleading guilty to aggravated discharge of a firearm and receiving a sentence of eight years' imprisonment. Pursuant to the agreement, the court also agreed to recommend defendant for impact incarceration. The court admonished defendant as follows:

> "Impact Incarceration commonly referred to as BootCamp is recommended by me, and that is it.
>
>     [Defendant], I said, 'Recommended by me.' I cannot order the Department of Corrections [(DOC)] to do things. They are the decision maker on that. I—the Judge is recommending it. I'm recommending it, and then it's up to them whether you get it ***.' "

Defendant stated that this was his understanding of the agreement.

¶ 6    The court discussed with defendant a written plea form, a supplemental sentencing financial form, and a consent to impact incarceration form. The court asked defendant if anyone had promised him anything other than the terms of the plea agreement to get him to sign the forms, and defendant said no.

¶ 7    As a factual basis for the plea, the prosecutor stated that the police department received a report that shots had been fired. When they arrived at the scene, they spoke with an eyewitness who stated that a group of four black men and one black woman fired three shots and ran away. The officers then spoke to the two victims of the shooting, Alexis Mixon and Rikia Greaten. Mixon reported that she saw a group of three black men and two black women. One of the men in the group discharged a firearm in the direction of her vehicle. Mixon drove away. Mixon and Greaten described the shooter as black, approximately five feet and six inches tall, weighing approximately 160 pounds, and wearing a black hooded sweatshirt and jeans. Eventually, officers learned from Greaten that she had seen the shooter in the area before and knew his nickname. Mixon used that information to find a photograph of the shooter on Facebook. Mixon believed that the photograph was posted approximately three years prior to the shooting. An officer recognized the individual in the photograph to be defendant from previous encounters. Mixon and Greaten eventually selected defendant as the shooter from photographic lineups.

¶ 8    The court accepted defendant's plea.

¶ 9    Defendant filed a motion to withdraw his guilty plea. The motion stated:

"The plea is being challenged on the following grounds:

1) The plea was not voluntarily and intelligently made. Defendant only entered a guilty plea after he was repeatedly assured of his eligibility for bootcamp.

3

2) Upon being processed in the [DOC], Defendant learned that he is not eligible for bootcamp, because of the 85% sentence he must serve.

3) Had Defendant known that he is not eligible for bootcamp. Defendant would have proceeded to trial."

¶ 10    A hearing was held on the motion to withdraw the guilty plea. The same attorney who represented defendant in the guilty plea proceedings represented him on his motion to withdraw his plea. Defense counsel advised the court that she had repeatedly promised defendant that he was eligible for impact incarceration. She reviewed the impact incarceration statute with defendant, and it appeared based on the statute that defendant was eligible. However, after defendant entered the DOC, the DOC advised him that he was not eligible for impact incarceration because a firearm was involved in the offense. Defense counsel also spoke with an individual at the DOC who told her that a person convicted of a violent offense was not eligible for impact incarceration. Defense counsel did not know that the DOC had this policy at the time of the plea. She stated that the only reason defendant agreed to the plea agreement was because she assured him that he was eligible for impact incarceration.

¶ 11    The court stated that it would be sympathetic to defendant's position if it received something in writing from the DOC stating that it would have been impossible for defendant to receive impact incarceration. The court continued the matter to allow defendant to gather more evidence concerning the DOC's policy.

¶ 12    At the next hearing, defense counsel stated that she had spoken to a person at the DOC who told her that if a weapon was used in the commission of the offense, a defendant would not receive impact incarceration. The individual from the DOC said that this was not a written policy, and he refused to provide a letter or affidavit stating that this was an unwritten policy.

4

¶ 13    Defense counsel stated that during the plea negotiations, the State indicated that impact incarceration was part of the plea bargain. Defense counsel relayed this information to defendant. Defendant said he did not want to take the plea deal because he did not believe he was eligible for impact incarceration. Defense counsel went through the relevant statute with defendant, and she determined that defendant was eligible pursuant to the statute. Defense counsel spoke with Assistant State's Attorney Jeremy Beard about defendant's insistence that he was not eligible. Beard told defense counsel that if defendant did not receive impact incarceration, they could come back to court and have the plea withdrawn. When defense counsel filed the motion to withdraw defendant's plea, she spoke to Beard. Beard "said he did not recall stating that he would be willing to inform the Court that this is the conversation [he and defense counsel] had." Beard no longer worked for the state's attorney's office and had moved to another state.

¶ 14    Defense counsel argued that defendant should be allowed to withdraw his plea because he was not eligible for impact incarceration pursuant to the unwritten policy of the DOC and because Beard had promised that the "damage would be undone" if defendant did not receive impact incarceration. Defense counsel also argued that defendant received ineffective assistance of counsel if she should have known of the DOC's unwritten policy and that Beard would not relay their conversation to the court.

¶ 15    The court denied the motion to withdraw the guilty plea.

¶ 16    Defendant appealed. We remanded the matter for new postplea proceedings because defense counsel failed to file a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. May 8, 2016).

¶ 17    On remand, defense counsel filed a Rule 604(d) certificate and a motion to withdraw guilty plea that was identical to the one that she had filed in the initial proceedings.

5

¶ 18   A hearing was held on the motion to withdraw the guilty plea. Defendant testified that he did not want to enter the plea agreement because he did not believe he was eligible for impact incarceration. Other inmates at the county jail who had participated in the impact incarceration program had told defendant that he would not be eligible. Defense counsel told defendant that he was eligible, and they went over the statute together. After that, defendant was somewhat convinced that he was eligible for impact incarceration. Defense counsel told defendant that she had talked to Beard, and defendant would be able to "come back to court" and "take the plea back" if he was not admitted into the impact incarceration program. The following exchange occurred between defendant and defense counsel:

"Q. Did he—were you assured that if you didn't get boot camp you could take back your plea?

A. Yes.

Q. And you believe that you were informed—informed of that plan by your lawyer and the Assistant State's Attorney?

A. Yes.

Q. Okay. So when did you find out—and was that the only reason you pled guilty?

A. Yes.

Q. Were you willing to go to trial that day?

A. Yes."

Defendant stated that he never talked to Beard directly; he only learned about defense counsel's conversation with Beard by talking to defense counsel.

¶ 19    Defendant testified that when he arrived at the DOC, he was told that he was not eligible for impact incarceration due to his prior offenses and the fact that he was required to serve 85% of his sentence. He did not receive anything in writing regarding his eligibility.

¶ 20    The State submitted an affidavit from Beard stating that Beard had never told defense counsel that defendant could withdraw his guilty plea if he was not accepted into the impact incarceration program. The prosecutor, defense counsel, and the court discussed the fact that the State could not actually allow a defendant to withdraw a plea. Rather, the State could choose not to object to a motion to withdraw a plea. The ultimate determination was up to the court.

¶ 21    Defense counsel argued that the court should allow defendant to withdraw his plea because it was induced by a promise that the State had not kept. Defense counsel said that Beard said "he would help out and undo the damage if [defendant] did not get boot camp, and he did not." Defense counsel stated:

> "I had talked to the Assistant State's Attorney Jeremy Beard, and he said [defendant]'s eligible. If it doesn't—if he doesn't get it, come back, and I'll let the Judge know that—that I said—you know, if you come back, let me know it didn't work, I will go in and put in a good word so that the—your client can withdraw the plea, and that's what he said in so many words."

¶ 22    Defense counsel further stated:

> "You know, for a defense attorney to—to painstakingly decide whether he is eligible for boot camp, and then to be reassured by the State, you know, if something goes wrong, he will come back and talk to the Court. You know, we're officers of the court and everyone—you know, I should be able to represent my client based on his word, and if I—if I'm not, you know, my client suffers. ***

7

*** [T]here was a discussion. I said, you know, I know that the Appellate Court won't do anything if the DOC won't follow through with what was promised, and [the State] said, no, don't worry about that, don't worry about that. And so I made extreme efforts to make sure that I was telling my client, yes, this will—you will get boot camp, and if you don't, the State's Attorney will—can come back here and tell the Judge what—what the promise was."

¶ 23    Defense counsel acknowledged that this promise was not included in the written plea agreement and that she did not mention it at the plea hearing. Defense counsel stated that she did not believe that it was necessary to put this on the record because she took Beard at his word and believed that he would follow through on the promise. She said that she would not have told defendant about the promise if she did not believe Beard.

¶ 24    The court denied the motion. The court stated that it did not know what was said in the conversation between plea counsel and Beard. The court noted that the State's alleged promise not to object to a motion to withdraw the guilty plea was not part of the plea agreement as it was stated at the plea hearing. The court also noted that defendant stated at the plea hearing that he had not been promised anything other than the terms of the agreement.

¶ 25                                  II. ANALYSIS

¶ 26    Defendant argues that the circuit court erred in denying his motion to withdraw his guilty plea because he pled guilty based on plea counsel's assurance that he would be able to withdraw his guilty plea if he was not accepted into the impact incarceration program. "[T]he general rule is that it is within the sound discretion of the trial court to determine whether a guilty plea may

8

be withdrawn, and, on appeal, this decision will not be disturbed unless the decision is an abuse of that discretion." *People v. Davis*, 145 Ill. 2d 240, 244 (1991).

¶ 27 We first address our ability to review this issue. The State contends that defendant has forfeited this issue by failing to include it in the motion to withdraw his guilty plea. Defendant argues that the issue was generally raised in the motion because the motion argued that defendant's plea was not knowing and voluntary. We find that the issue was not raised in the motion to withdraw guilty plea. Reading the motion as a whole, it is clear that the only issue raised was that defendant's plea was not knowing and voluntary because he was assured that he was eligible for impact incarceration when he was not.

¶ 28 Defendant contends that we should review his claim because he asserted the same essential claim in the circuit court. We disagree. In the circuit court, defense counsel argued that defendant should be able to withdraw his guilty plea because it was induced by a promise the State failed to keep—namely, that the State would not object to withdrawal of the plea if defendant did not receive impact incarceration. The issue defendant raised in the circuit court called upon the court to determine whether the State actually made such a promise to defendant. Accordingly, the State's response to defendant's argument was to introduce evidence that no such promise was made by the State. Neither the State nor the circuit court was given an opportunity to consider the argument that defendant now raises on appeal—that is, that withdrawal of defendant's plea is warranted based on defense counsel's assurances regarding Beard's promise even if Beard did not actually make the promise. Accordingly, the issue is forfeited.

¶ 29 Defendant alternatively argues that defense counsel provided ineffective assistance in failing to present and preserve the issue. To succeed on a claim of ineffective assistance of

9

counsel, defendant is required to show that (1) his counsel performed deficiently, and (2) he was prejudiced by counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984).

¶ 30    First, we consider whether counsel performed deficiently in failing to raise this claim. To show that defense counsel performed deficiently, defendant must show that counsel's performance fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687-88.

¶ 31    Generally, the court should permit withdrawal of a guilty plea where the plea was entered based on a misapprehension of the facts or the law; the plea was entered as a result of misrepresentations by defense counsel, the State, or someone else in authority; there is doubt as to the defendant's guilt; the defendant has a defense worthy of consideration; or the ends of justice would be better served by submitting the case to a jury. *Davis*, 145 Ill. 2d at 244. A defendant's subjective impressions alone are not sufficient grounds for vacating a guilty plea. *Id.* Rather, there must be "substantial objective proof" showing that a defendant's mistaken impressions were reasonably justified. *Id.*

¶ 32    In the instant case, counsel performed deficiently in failing to argue that defendant entered his plea due to a misapprehension of the facts based on defense counsel's incorrect assurance that defendant would be allowed to withdraw his plea if he did not receive impact incarceration. This claim had a valid legal basis. See *People v. Morreale*, 412 Ill. 528, 531-32 (1952) ("Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority *** the court should permit the withdrawal of the plea of guilty and

10

allow the accused to plead not guilty."). Also, this claim would have been supported by defendant's testimony that he did not want to enter the plea agreement because he had doubts concerning his eligibility for impact incarceration, but he agreed to do so after counsel advised him that the State had agreed that he would be able to withdraw the plea if he did not receive impact incarceration. The claim would have also been supported by defense counsel's statements to the court, which indicated that she had conveyed to defendant that the State had agreed that defendant would be able to withdraw his guilty plea if he did not receive impact incarceration.

¶ 33    This would have been a much stronger argument for withdrawal of the guilty plea than defense counsel's argument that the plea was induced by the State's unkept promise. The argument that defense counsel raised in the circuit court required the court to find that the State actually made a promise that it failed to keep. The State denied that any such promise was made, creating a factual dispute. However, the court would not have been required to find that the State actually made a promise in order to grant relief on the claim that defendant pled guilty based on his counsel's incorrect representations concerning such a promise.

¶ 34    We next consider whether defendant was prejudiced by counsel's failure to raise this issue. In order to show prejudice, defendant must show that but for counsel's deficiencies, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 35    We find that there is a reasonable probability that the court would have granted defendant's motion to withdraw his guilty plea if counsel had argued that defendant's plea was based on his mistaken impression that he would be able to withdraw his guilty plea if he did not receive impact incarceration and that this impression was reasonably justified by defense counsel's assurances. As discussed above, this argument had a valid legal basis, would have been

11

supported by defendant's testimony and the representations of defense counsel, and it would not have required the court to resolve the factual dispute as to whether the State actually made this promise to defense counsel. *Supra* ¶¶ 32-33.

¶ 36        The State argues that defendant has not shown prejudice because he has failed to assert a claim of actual innocence or a plausible trial defense or show that it was rational under the circumstances to reject the plea offer. We acknowledge that our supreme court has held that in order to establish the prejudice prong of an ineffective assistance of counsel claim, "a guilty-plea defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). This ordinarily requires the defendant to assert a claim of actual innocence or articulate a plausible trial defense. *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005). However, where a guilty-plea defendant claims that he relied on counsel's erroneous advice about a consequence of his plea, the defendant is required to show that the decision to reject the plea agreement would have been rational under the circumstances. *Brown*, 2017 IL 121681, ¶ 48.

¶ 37        We believe that the prejudice standard articulated above applies to claims that counsel provided ineffective assistance in the plea negotiation process rather than claims that counsel was ineffective for raising an issue in a motion to withdraw guilty plea, as in the instant case. However, even if we were to accept the State's position that this prejudice standard applies, we believe defendant has shown that it would have been rational under the circumstances to reject the plea offer. Defendant's testimony and defense counsel's representations to the court showed that defendant agreed to the plea agreement despite his reservations concerning his eligibility for impact incarceration because counsel assured him that he would be able to withdraw the plea if

12

he did not receive impact incarceration. Also, defendant asserts that he could have challenged the State's identification evidence had the case gone to trial.[1] According to the State's factual basis, no one at the scene immediately identified defendant as the shooter. Rather, defendant was identified later when one of the victims found an old photograph of defendant on Facebook and advised the police that he was the shooter.

¶ 38 Having found that defendant has shown that his counsel was ineffective for failing to raise this issue in the motion to withdraw the guilty plea, we consider the appropriate remedy. Defendant requests that we permit him to withdraw his guilty plea based on his underlying claim that he pled guilty under the mistaken, though reasonably justified, impression that he would be able to withdraw his guilty plea if he did not receive impact incarceration. However, this would require us to find that the circuit court abused its discretion in denying defendant's motion to withdraw his guilty plea based on an issue that was even not before the court. Such a finding would be inappropriate.

¶ 39 "The remedy for a valid claim of ineffective assistance of counsel should be tailored to the injury from the constitutional violation and should not unnecessarily infringe on competing interests." *People v. Patrick*, 2011 IL 111666, ¶ 35. Here, the deprivation of the effective assistance of counsel occurred during postplea proceedings. Accordingly, we believe that the appropriate remedy in this case is to remand the matter for new postplea proceedings to afford defendant the opportunity to raise his claim in the circuit court.

¶ 40 We do not reach the second issue defendant raises in this appeal—namely, that defense counsel was ineffective for failing to present certain evidence and failing to withdraw. We note,

_____

[1]Defendant asserts this argument concerning the second issue he raises on appeal, but it applies with equal force to this issue.

13

however, that defendant argues, *inter alia*, that his counsel should have withdrawn as counsel so that she could have testified as a witness on defendant's behalf. Remand will give defendant an opportunity to present his claim with the assistance of new counsel and to call his former counsel as a witness if he so chooses.

¶ 41　　　　Finally, the dissent asserts that defense counsel was not ineffective because the record did not establish that any unwritten rules existed regarding the DOC's criteria for impact incarceration eligibility. We clarify that our finding of ineffectiveness was not based on counsel's failure to advise defendant of any unwritten policies of the DOC. Rather, we have found that counsel was ineffective for failing to argue in the proceedings on the motion to withdraw defendant's guilty plea that the plea was based on defendant's reasonably justified misapprehension that he would be able to withdraw his plea if he did not receive impact incarceration.

¶ 42　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 43　　　　The judgment of the circuit court of Peoria County is reversed, and the matter is remanded to the circuit court. The court is directed to appoint new counsel and to hold new postplea proceedings to give defendant the opportunity to raise his claim that he pled guilty based on his mistaken impression that he would be able to withdraw the plea if he did not receive impact incarceration and that this impression was reasonably justified by his counsel's assurances.

¶ 44　　　　Reversed and remanded with directions.

¶ 45　　　　JUSTICE WRIGHT, dissenting:

¶ 46　　　　I respectfully disagree that trial counsel was ineffective. This record does not conclusively establish that defense counsel gave defendant any inaccurate advice or that any

14

unwritten rules exist or previously existed regarding DOC's criteria for impact incarceration eligibility. The possibility of the existence of informal policies or unwritten rules regarding the impact incarceration criteria applied by DOC staff remains entirely speculative.

¶ 47        Here, the trial court carefully and clearly admonished defendant that while the court was recommending impact incarceration, the court's recommendation could be summarily rejected by the authorities at DOC. The trial court made defendant fully aware that the trial court had no control over whether DOC would reject defendant as a participant in the impact incarceration program with or without proper justification. Respectfully, in my view, the fact that this risk materialized, as explained by the court, does not render trial counsel's representation ineffective.