NOTICE

Decision filed 11/04/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180572-U

NO. 5-18-0572

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 10-CF-162 |
| | ) | |
| ANTONIO SMITH, | ) | Honorable |
| | ) | Thomas J. Tedeschi, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Justices Welch and Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant failed to demonstrate he received ineffective assistance of plea counsel where the record demonstrated he understood the sentencing range when he pled guilty and there was no evidence to support his claim that he would have changed his plea had he known a maximum sentence was plausible. The defendant's youth-based as-applied constitutional challenge to his sentence lacks merit because the court did not impose a *de facto* life sentence.

¶ 2    The defendant, Antonio Smith, was 19 years old when he and Jacob Bohanon committed the offenses at issue. The defendant entered an open guilty plea to one count of attempted murder and one count of home invasion. The defendant was sentenced to two concurrent 30-year sentences in the Illinois Department of Corrections (IDOC), followed by a 3-year term of mandatory supervised release (MSR) on those charges.

1

¶ 3    The defendant filed a motion to reconsider sentence following the sentencing hearing. In response, the State filed a motion to amend judgment, arguing that the court's decision to impose concurrent sentences violated section 5-8-4(d)(1) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-8-4(d)(1) (West 2008)), which mandates consecutive terms for first degree murder and Class X or Class 1 felonies when the offender inflicts severe bodily injury. The court vacated the defendant's sentences, finding them to be void, and ordered a new sentencing hearing. The defendant was subsequently sentenced to a 30-year term of incarceration, followed by a 3-year term of MSR, for attempted murder. The defendant was also sentenced to a 10-year term of incarceration for one count of home invasion in an unrelated case. The sentences in the two cases were ordered to be served consecutively, for a total of 40 years in prison.

¶ 4    On appeal, the defendant argues that (1) the trial court abused its discretion in denying his motion to withdraw his plea due to ineffective assistance of plea counsel and (2) his 40-year aggregate sentence violates the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) as applied to him. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6    On April 10, 2010, the defendant, Antonio Smith, and his friend, Jacob Bohanon, robbed and invaded a home. After committing these offenses, Bohanon expressed interest in joining the Gangster Disciples. The defendant was a member of that gang. Bohanon's initiation requirement was to murder an individual.

¶ 7    On April 26, 2010, the defendant and Jacob Bohanon invaded Susan Zettler's house after hanging out and doing drugs. The defendant and Bohanon had previously canvassed Zettler's

2

home. A while later, the defendant and Bohanon knocked on the door, asking Zettler if they could use her phone. Zettler agreed, requiring the men to use the phone outside her door. Bohanon punched Zettler in the face, knocking her down, and the defendant and Bohanon entered the house. The defendant then took a knife and slashed Zettler's throat, leaving her bleeding on the floor. The defendant and Bohanon stole some items and fled the scene. Zettler grabbed her husband's jacket to stop the bleeding on her throat and ran to her neighbor to call the police and an ambulance. Zettler faced financial hardships caused by the severe bodily injuries she sustained in the knife attack.

¶ 8     The defendant and Bohanon were interrogated on the same day. Initially, the defendant claimed he was never at Zettler's home. However, after approximately one hour, the defendant admitted that he was at Zettler's dwelling and that he was the one who slashed her throat.

¶ 9     The State filed a five-count indictment, charging the defendant with attempted murder in count I (a Class X felony), attempted murder in count II (a Class X felony), home invasion in count III (a Class X felony), armed robbery in count IV (a Class X felony), and theft in count V (a Class 2 felony). Eric Dirnbeck was appointed as counsel for the defendant.

¶ 10     On November 19, 2010, the defendant entered an open guilty plea to count I (attempted murder) and count III (home invasion). Both charges were related to the incident at Susan Zettler's dwelling on April 26, 2010. Counts II, VI, and V were dismissed in exchange for the plea.

¶ 11     On February 25, 2011, the defendant was sentenced to two 30-year sentences in the IDOC for count I and count III, followed by a 3-year term of MSR. The sentences imposed were ordered to be served concurrently.

¶ 12    On March 25, 2011, the defendant filed a motion to reconsider sentence. The defendant requested that the court reconsider the sentence imposed, alleging it was excessive and violated article 1, section 11 of the Illinois Constitution. In response, the State filed a motion to amend judgment, arguing that by ordering the sentences to run concurrently, the court violated section 5-8-4(d)(1) of the Code of Corrections, which mandates consecutive terms for first degree murder and any Class X or Class 1 felony when the offender inflicts severe bodily injury. See 730 ILCS 5/5-8-4(d)(1) (West 2008).

¶ 13    On September 21, 2012, Eric Dirnbeck, the defendant's attorney, filed a motion to withdraw as counsel because the defendant intended to file a motion to withdraw guilty plea due to ineffective assistance of counsel, thereby creating a conflict of interest.

¶ 14    On February 22, 2013, the court granted the motion to withdraw, and attorney Jerry Crisel was appointed to represent the defendant.

¶ 15    On January 8, 2013, the court voided the defendant's sentences as the sentences were not compliant with section 5-8-4(d)(1) of the Code of Corrections. A new sentencing hearing was set. Shortly before that hearing, the State filed a motion to dismiss count III, the charge of home invasion.

¶ 16    On September 27, 2013, the defendant was sentenced to a 30-year year term of incarceration, followed by a 3-year term of MSR, for the charge of attempted murder in count I of the indictment. Count III was dismissed without objection. Subsequently, the defendant filed a motion to reconsider sentence. Additionally, the defendant's attorney, Jerry Crisel, filed a motion to withdraw as counsel as he was elected to the office of associate judge.

¶ 17    On May 27, 2014, the court heard the defendant's motion to reduce sentence, and the motion was denied. The defendant appealed the decision.

¶ 18    On July 13, 2016, this court remanded the matter to the trial court as the Rule 604(d) certificate filed by the defendant's counsel was defective. Following the order to file a proper Rule 604(d) certificate, the defendant's counsel filed a motion to withdraw plea and reconsider sentence dated January 10, 2018.

¶ 19    On August 10, 2018, the court held an evidentiary hearing on the motion to withdraw plea and reconsider sentence. The court considered testimony from several witnesses, exhibits admitted into evidence, and arguments of counsel. The court found that the defendant's guilty plea was voluntary, and noted that failure to receive a lower sentence, as hoped, does not constitute an involuntary plea due to ineffective counsel. In addition, the court noted that the defendant previously stated that he understood all terms of sentencing and that no promises were made to him. As such, counsel's representation did not fall below the objective standard of reasonableness as the defendant claimed. In addressing the defendant's arguments concerning his sentence, the court noted that while a 30-year incarceration term is lengthy, the sentence falls within the statutory range for a Class X felony. The court emphasized that it considered the defendant's prior record, credibility, demeanor, general moral character, mentality, social environment, habits, and age in fashioning a proper sentence. The court concluded the *Miller* factors do not apply to the defendant because he was an adult over the age of 18 when the act was committed. See *Miller v. Alabama*, 567 U.S. 460 (2012). Lastly, the court disagreed with the defendant's counsel that an offender's rehabilitative potential is entitled to greater weight than the seriousness of the offense. The court emphasized the defendant had committed attempted murder while still out on probation for a different offense. Following the court's ruling, the defendant filed this appeal.

¶ 20                                    II. ANALYSIS

¶ 21     The defendant presents two arguments. First, the defendant claims he received ineffective assistance of plea counsel, and as such, the trial court abused its discretion in denying his motion to withdraw his guilty plea. Second, the defendant argues that the recent expansion of *Miller v. Alabama* to some young adults applies to him. He argues that he received a 40-year *de facto* life sentence without any consideration of the *Miller* factors, and he argues that his sentence is therefore unconstitutional as applied to him.

¶ 22                     A. Ineffective Assistance of Plea Counsel

¶ 23     The defendant contends the trial court abused its discretion in denying his motion to withdraw his guilty plea because he received ineffective assistance of plea counsel, which led to his failure to understand the applicable sentencing range. We disagree.

¶ 24     A defendant does not have an absolute right to withdraw his guilty plea. *People v. Edmonson*, 408 Ill. App. 3d 880, 884 (2011). However, a defendant should be allowed to withdraw his plea if it was not entered voluntarily or with full knowledge and understanding of the consequences of pleading guilty. *People v. Boyd*, 2018 IL App (5th) 140556, ¶ 15. A plea is not voluntary if the defendant received ineffective assistance of plea counsel. See *id*. ¶ 16.

¶ 25     A claim of ineffective assistance of plea counsel is governed by a two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Boyd*, 2018 IL App (5th) 140556, ¶ 16. The first prong requires the defendant to show that counsel's performance was deficient and fell below an objective standard of reasonableness. *Id*. The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Conclusory statements merely alleging a

6

defendant would not have pleaded guilty and demanding a different outcome are insufficient to establish prejudice. *People v. Brown*, 2017 IL 121681, ¶ 26. A defendant cannot make the required showing unless a decision to reject the plea would have been rational under the circumstances. *Id.*

¶ 26    The defendant bears the burden of establishing that he should be allowed to withdraw his guilty plea. *Edmonson*, 408 Ill. App. 3d at 884. We will reverse the trial court's ruling on a motion to withdraw a plea only if we find that the court abused its discretion. *Boyd*, 2018 IL App (5th) 140556, ¶ 13.

¶ 27    In support of his claim, the defendant relies on his own allegations and testimony. The defendant contends that he did not understand the sentencing range. He asserts that had he understood that receiving the maximum sentence was a possibility, he would have not pled guilty and would have insisted on going to trial. The defendant also relies on testimony from his plea counsel, Eric Dirnbeck, who testified that he did not have a specific recollection of his proceedings with the defendant. The defendant asserts that Dirnbeck insisted that by pleading guilty the defendant would receive a mid-level sentence. We are not persuaded.

¶ 28    We first address the defendant's claim that counsel's misadvice led to his failure to understand the sentencing range. The defendant argues counsel told him that he was much more likely to get a mid-range sentence by pleading guilty. On November 19, 2010, the defendant, hoping to avoid the maximum sentence, entered an open guilty plea for count I (attempted murder) and count III (home invasion). In exchange for his plea, the State dropped the remaining three counts of the indictment. Although count II charged him with attempted murder under an alternate theory, counts IV and V charged him with additional felonies. Eventually, count III

(home invasion) was dismissed as well. Thus, defendant was ultimately convicted only on one count of attempted murder from actions occurring on April 26, 2010.

¶ 29   At the plea hearing, the trial judge explained to the defendant that the possible sentencing range for attempted murder was 6 to 30 years. He further explained that if the defendant were eligible for extended-term sentencing, he could receive a sentence of 30 to 60 years. When the judge asked the defendant whether he understood this, the defendant replied, "Yes, Your Honor." The court next advised the defendant about the sentencing range for home invasion. Dirnbeck stated, "Judge, I know you advised Mr. Smith that he—of the sentencing range if he were eligible for extended-term sentencing, but I don't believe that he is because he just asked me about that." At this point, the court explained that the defendant would be eligible for extended-term sentencing if he had a prior conviction for a Class X felony. When asked if he understood this, the defendant indicated that he did. The defendant also confirmed that he understood all the terms of the plea agreement and that nothing was promised to him. We recognize that at the hearing on the motion to withdraw his plea, the defendant testified that he believed the trial court's admonishments were only a formality. However, this testimony is contradicted by his responses to the court's questions at the plea hearing where he clearly stated that he understood the sentencing range and the implications of pleading guilty. The fact that he asked questions concerning the possibility of an extended-term sentence provides further support for this conclusion.

¶ 30   The defendant's claim is also contradicted by the testimony of his attorney at the hearing on the motion to withdraw the defendant's plea. While Dirnbeck did testify that he personally believed that pleading guilty would aid in receiving a reduced sentence, he also affirmed that Illinois law provided no mitigation factors to pleading guilty. Dirnbeck then testified, "I would

8

never, never did, and would never, tell my client to plead guilty and tell them I thought they had a good chance at getting a mid-range sentence when in my mind I knew they were going to get the maximum." Dirnbeck further testified that he would never tell a client who pleads guilty they were sure to get a mid-range sentence. Instead, he would ask, "[I]f you plead guilty, you are going to get the maximum. Now, what do you want to do?"

¶ 31 We reject the defendant's claim for two reasons. First, as we have already stated, the burden falls upon the defendant to demonstrate his motion to withdraw guilty plea should be granted. *Edmonson*, 408 Ill. App. 3d at 884. The defendant presented no more than mere allegations that counsel's alleged misadvice led him to plead guilty. The defendant confirmed at the plea hearing that he understood the sentencing range, the ramifications of his plea, and that he was promised nothing.

¶ 32 Second, the defendant must demonstrate that, but for counsel's alleged misadvice, he would not have pled guilty and would have insisted on going to trial. *Boyd*, 2018 IL App (5th) 140556, ¶ 18. To prevail on a claim of ineffective assistance of plea counsel, the defendant must present more than mere allegations, conclusory statements, or his own testimony. *Brown*, 2017 IL 121681, ¶ 47; *People v. Hale*, 2013 IL 113140, ¶ 18. A defendant must show the decision to reject the plea would have been rational under the circumstances. *Brown*, 2017 IL 121681, ¶ 26.

¶ 33 Here, the defendant likely would have received a greater sentence had he not pled guilty. Had the defendant not taken the guilty plea, he might have been convicted of two additional felonies (the armed robbery charged in count IV, a Class X felony, and the theft charged in count V, a Class 2 felony), which could have extended his incarceration time substantially. The defendant's chance to receive a lower sentence was minimal as the defendant was out on

9

probation for a prior offense when he committed the attempted murder. The defendant therefore fails to establish that Dirnbeck's allegedly ineffective assistance prejudiced him.

¶ 34    In sum, we find no support in the record either for the defendant's bare allegation that he was misled concerning the possible sentence he might face or for his claim that absent the alleged misinformation, he would not have pled guilty and would have insisted on going to trial instead. For these reasons, we reject his claim of ineffective assistance of plea counsel. We conclude that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his plea.

¶ 35                B. Constitutional Challenge to the Defendant's Sentence

¶ 36    Next, the defendant argues his sentence violated both the eighth amendment and the Illinois proportionate penalties clause as applied to him. We reject these arguments because we find that the defendant's 40-year aggregate sentence did not constitute a *de facto* life sentence.

¶ 37    In *Miller*, the United States Supreme Court held that imposing a sentence of natural life in prison on a juvenile without the possibility of parole violates the eighth amendment unless the court considers the mitigating features of youth. *Miller*, 567 U.S. at 479-80. The United States Supreme Court recognized that youthful offenders under the age of 18 have characteristics that make them less culpable and more likely to be rehabilitated than adult offenders. *Id.* at 465-71.

¶ 38    Illinois courts have expanded the holding of *Miller* by allowing young adult defendants sentenced to actual or *de facto* life sentences without consideration of the mitigating factors found in *Miller* to attempt to argue that their sentences are unconstitutional "as applied" under the proportionate penalties clause. *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 69; *People v. House*, 2019 IL App (1st) 110580-B, ¶ 54. Illinois courts have allowed this expansion of *Miller*

10

due, in part, to recent developments in neuroscience showing that brain maturation is not complete until the mid-20s. *House*, 2019 IL App (1st) 110580-B, ¶ 55.

¶ 39 The Illinois Supreme Court has emphasized that an as-applied constitutional challenge to a young adult defendant's sentence is only viable if the record is adequately developed to allow the reviewing court to determine how these new findings in neuroscience apply to the defendant's circumstances. *People v. Harris*, 2018 IL 121932, ¶ 46; *People v. Thompson*, 2015 IL 118151, ¶ 38.

¶ 40 We need not review whether the record in this case was adequately developed because the defendant did not receive a *de facto* life sentence. As stated earlier, he was sentenced to 30 years for attempted murder in this case, and he received a 10-year sentence in an unrelated case. The defendant argues that in considering whether he was given a *de facto* life sentence, we should consider the aggregate time he will spend in prison under these two unrelated sentences. He points to the First District's recent decision in *People v. Ruiz* in support of this argument. See *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 86. Although we find the *Ruiz* court's rationale persuasive, an aggregate prison term of 40 years does not constitute a *de facto* life sentence. The Illinois Supreme Court has held that a sentence which exceeds 40 years is considered a *de facto* life sentence. *People v. Buffer*, 2019 IL 122327, ¶ 42. Conversely, a sentence of 40 years or less does not constitute a *de facto* life sentence. *Id.* ¶ 41. We, therefore, conclude the defendant did not receive a *de facto* life sentence, regardless of whether we consider his aggregate prison term of 40 years or his 30-year sentence in this case alone.

¶ 41 We express no opinion as to whether the record was sufficiently developed to allow consideration of the defendant's as-applied sentencing challenge. Neither *Miller* nor any of the Illinois holdings expanding its protection are applicable in cases that do not involve actual or

*de facto* life sentences. As such, the defendant cannot demonstrate that his sentence was unconstitutional as applied to him.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we affirm the defendant's conviction and sentence.


¶ 44    Affirmed.