NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220014-U

NO. 4-22-0014

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 7, 2023
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JAVARUS T. LEACH, | ) | No. 03CF2076 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joseph G. McGraw, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirmed the trial court's order dismissing defendant's postconviction claim of ineffective assistance of counsel for failure to allege on direct appeal that the trial court abused its discretion by denying defendant's motion to continue to locate a defense witness who was evading service.

¶ 2    In August 2005, a jury found defendant, Javarus T. Leach, guilty of first degree murder (720 ILCS 5/9-1(a)(2) (West 2002)), and the trial court later sentenced him to 60 years in prison. In August 2010, defendant, through counsel, filed a third amended petition seeking relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) alleging, among other things, that defendant's counsel on direct appeal rendered ineffective assistance by failing to argue that the court had abused its discretion by denying defendant's motion to continue defendant's jury trial to locate a defense witness. In August 2013, the court granted the State's motion to dismiss defendant's claim.

¶ 3        Defendant appeals, arguing that (1) the trial court erred by dismissing defendant's claim of ineffective assistance of appellate counsel at the second stage because defendant made a substantial showing that appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the court abused its discretion by denying defendant's motion to continue and (2) alternatively, defendant received unreasonable assistance from his postconviction counsel for failure to allege facts contained in the trial record that were necessary to establish that appellate counsel was ineffective.

¶ 4        We disagree and affirm.

¶ 5                                I. BACKGROUND

¶ 6                A. The Charges, Pretrial Proceedings, and Jury Trial

¶ 7                                1. *The Charges*

¶ 8        In August 2003, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(2) (West 2002)), alleging that in July 2003, defendant shot and killed Quantel Blaylock.

¶ 9                            2. *The Pretrial Proceedings*

¶ 10        Defendant's case proceeded through the normal course of pretrial discovery and pretrial motions. In March 2005, defense counsel announced that the parties were "getting very close to answering ready for trial." In April 2005, at a status hearing, the trial court set the case for a jury trial on July 18, 2005.

¶ 11        On June 20, 2005, at a status hearing, defense counsel asked the trial court to authorize $2000 to hire the Rockford Detective Agency to assist with defense witness interviews and service of subpoenas. The court authorized $1000 "at this stage" and told counsel that if he exhausted that amount, he could "status it up and we can consider a further amount."

¶ 12        The parties next convened on July 15, 2005, for a "final pretrial." Defense counsel

reported to the court the following regarding defense witnesses:

"[F]or the last two weeks to ten days, we've had Rockford Detective Agency firming up and taking statements. And at 11 o'clock this morning I received a statement from one of our three main witnesses, if you will, for the first time. And that's not without a considerable amount of effort on my part to have the witness voluntarily come forward months prior to this week.

I tendered a copy of that statement to [the prosecutor] just now, moments ago. And I think that it is an important matter, it changes the—it enhances the defense position."

(We note that defense counsel did not identify the witness by name at this hearing, but counsel's comments at a later hearing establish that the witness was Troy Perkins.)

¶ 13    Defense counsel moved to continue defendant's jury trial from July 18, 2005, to August 15, 2015. However, counsel asked that the case still be called for status on July 18, 2005, so the trial court could admonish witnesses that their trial subpoenas were being continued to August 15. Without objection from the State, the court granted defendant's motion to continue the jury trial.

¶ 14    On July 18, 2005, the parties convened for a status hearing and further discussed with the trial court the scheduling of defendant's jury trial and the status of witness subpoenas. Defense counsel advised the court that he had "two subpoenas that were served and the individuals are not here" and asked for a bench warrant. The court asked if the two individuals had been uncooperative. Counsel replied that one had been cooperative and the other had been "very evasive." The court replied, "Well, *** consider what you want to do, but I suppose if we resubpoenaed them for August 10 and they didn't appear, that would be enough time with a warrant

to get them in custody before the trial before your case comes up anyway."

¶ 15 Defense counsel replied, "Yes, I think it would."

¶ 16 The trial court then told defense counsel to "resubpoena those people for 10:30 on August 10. And *** you can attach a note to the subpoena that a failure to appear will result in a warrant for an arrest or something like that." (We note that defense counsel again did not identify the witnesses by name, but counsel's comments at a later hearing establish that one of the witnesses was Perkins.)

¶ 17 The parties convened again on August 10, 2005, for a hearing on pretrial motions. At the conclusion of the hearing, defense counsel raised the issue of the status of his subpoenas to two defense witnesses, Perkins and Marcus Robinson. Counsel stated, "These are two important defense witnesses." Counsel advised the trial court that he had submitted the new subpoenas for August 10 to the Rockford Detective Agency "over a week ago, perhaps 10 days ago." Counsel stated that he had spoken to the "serving agent" that morning, and the agent "said that he attempted service on Marcus Robinson and Troy Perkins at least 8 to 9 times apiece and has had difficulty." Counsel further stated as follows:

> "I spoke with [the prosecutor]. He said that Troy Perkins has—there is a
> bench warrant out on behalf of the State for some pending offense Mr. Perkins
> allegedly committed. I talked briefly to my client this morning, that we were still
> having difficulty serving these individuals.
>
> Now, they failed to appear on July 18th, and whether or not—what we can
> do, whether the Court would issue a material witness warrant for them, I need to
> address that with you. I probably will not be presenting the testimony until
> Thursday or Friday, next week, but they did fail to appear on the 18th. I think that

- 4 -

they are evading service from my process server."

¶ 18    Shortly thereafter, the prosecutor addressed the trial court regarding the State's efforts to assist with locating and serving the defense witnesses. The prosecutor stated the following:

"We have been looking for [Robinson], too, Judge. Troy Perkins did call back. They returned a phone call to our detectives. [Perkins] failed to appear in court last Friday. There was a warrant issued, so there's an outstanding warrant for him[.]"

¶ 19    The trial court then determined that it was unnecessary to issue a warrant for Perkins at that time because "there's already a bench warrant for him." Defense counsel replied, "Agreed."

¶ 20    The parties then discussed the length of the trial, agreeing that it would last approximately one and a half weeks.

¶ 21    3. *The Jury Trial*

¶ 22    i. Defendant's Motion to Continue

¶ 23    On August 15, 2005, the parties convened for defendant's jury trial. Defense counsel stated as follows:

"Judge, I wish to communicate to the court that the defense has disclosed Troy Perkins as a witness. We had a subpoena served on Mr. Perkins for the previously scheduled trial date, July 18[, 2005]. He did not appear on July 18th.

On July 15th, I received a statement from the Rockford Detective Agency, as they interviewed Troy Perkins, and I've tendered a copy of that to counsel.

The Rockford Detective Agency statement was very favorable to the

defense. I then attempted to serve Troy Perkins with a subpoena to appear on August 10, our last final pretrial conference. I talked to the serving individual from Rockford Detective Agency, and he said that he made numerous—several attempts to locate Troy Perkins at 1712 Genoa Street.

At our last pretrial conference on August 10, the State disclosed that there was a pending bench warrant for Troy Perkins on an unrelated matter and they were also looking for him.

In my opinion, Troy Perkins is a very material witness to the defense and a very vital witness to the defense concerning the circumstances existing prior to the shooting itself. He has given a statement describing himself as an eyewitness at the location, and his statements are very vital to the defense.

I reported to my client this morning that despite our efforts, including over the weekend—I've checked with the jail. He is not among the population of the Winnebago County jail—that a warrant for his arrest has not yet been perfected.

I advised my client I felt it was appropriate to move for a continuance on behalf of the defense until Troy Perkins could be secured as a material witness.

My client has informed me that he does not wish to have a continuance, that he wishes to proceed to trial. It is my advice and my position that we should move for a continuance until the pending bench warrant or further order of the court is served and Mr. Troy Perkins is secured as a witness for us. He is a very material witness to us."

¶ 24 The trial court replied, "Well, preliminarily I believe that it is counsel's decision as to whether or not to make the motion for continuance, not their client's decision. So, are you

making a motion?" Defense counsel responded, "I am making the motion, Your Honor."

¶ 25        The prosecutor objected, telling the trial court that his office had been attempting to locate Perkins and further stating as follows:

> "There is a warrant out for [Perkins]. They certainly can secure his attendance prior to—they haven't shown that there's any—we have been trying to locate him just simply to interview him, but they do have a statement that they've provided.
>
> I don't—based on what—my reading of the statement, I guess. I don't have the same feeling as far as how important that testimony is to—to the case.
>
> Mr. Perkins is simply another—simply an individual who purportedly now states that he was at the scene and actually is the subject to one of my motions *in limine*, which I would like to get to, and it depends on how the court rules. Also this would determine how important this Troy Perkins is. But we would object. They can certainly secure his attendance. We've attempted to locate him.
>
> They haven't given us any indication that they are going to get him into custody. He is evading us. He is evading defense. I think the guy doesn't want to be here. He doesn't want to testify. He did return a phone call and said he would meet with our detective, and then he didn't. So that's the best that we have been able to do with this guy."

¶ 26        The trial court asked, "Could your office assist the defense in making sure that they have somebody working on this arrest warrant currently?"

¶ 27        The prosecutor responded as follows:

> "We already have. Judge, I've sent the tactical unit out. I have had a

detective working on it at all times, and he still is. I will double check with him to make sure that he is still on it. So we have done everything that we can from our end."

¶ 28    The trial court asked defense counsel, "[D]id you have something else?" Defense counsel responded as follows:

"On—at our last final pretrial on August 10, [the prosecutor] was saying we already have a bench warrant, we are already working on this, we hope to have him—I will have him by the weekend, and we will be ready to go on Monday. I mean, these are representations of assistance by [the prosecutor]. And that he's already wanted on a prior warrant; and that we are going to have trouble finding him; if they can't find him, nobody can.

This is why we feel we have to have a short continuance of some duration. I don't know what, Judge, but I am reluctant to empanel a jury this morning and tomorrow without having a material witness warrant, and perhaps we need to have this man brought before the court and answer to the court as to his availability.

Now, he did not appear on July 18. I think that's the basis for our own independent material witness bench warrant to go forth, and I'm talking about a very short matter.

I know there is a lot of preparation on both sides to present this case today, but this is a very significant witness based on the prior statement that he made in July of '05, and he is, I think, evading, yes. I don't think that his intentions are to cooperate with us, but I also feel that we need to have him brought in before the jury on behalf of the defendant, and this is my request."

¶ 29    The following exchange then occurred:

"THE COURT: And you've had a subpoena outstanding for him; is that right?

THE PROSECUTOR: Since July 18. Then I attempted to resubpoena him for our final pretrial conference on August 10.

My private process server was unable to locate him even though they made several attempts, and they were in very close communication with him concerning what the problems were. They left cards, messages, and so forth, and physically went to the residence, 1712 Genoa. 'Several times' were his exact words. He estimated eight to nine times.

THE COURT: Do the statutes provide for a material witness warrant?

DEFENSE COUNSEL: It is an unusual situation, Judge. I think he is in contempt of court for having failed to appear on July 18, and beyond that, I am not sure.

THE COURT: At your request I will issue a warrant for him and—however, considering the age of this case—it's going on two years, isn't it?

DEFENSE COUNSEL: Yes.

THE COURT: I don't believe that I can simply continue the trial based upon this witness evading process. We don't know whether—when he might be found or whether he might be found. All we can do is our best in attempting to find him. It sounds like you are doing your best. The State has an arrest warrant active, and you are having an arrest warrant issued.

Undoubtedly this trial will extend another five days, won't it? So it gives

time before the end of the trial for them to continue looking for him, but I am going to deny the motion for continuance."

¶ 30                                    ii. The Evidence

¶ 31        Defendant's jury trial commenced. The State presented the testimony of six eyewitnesses who were present at the intersection of Henrietta and West State Streets in Rockford, Illinois, on the evening of July 24, 2003, when Quantel Blaylock was shot. Each witness testified similarly that defendant and Blaylock were arguing in the street. Blaylock told defendant that he did not want to argue. Defendant pulled a gun and pointed it at Blaylock. Two of the eyewitnesses additionally testified that Blaylock put his hands up when defendant pulled out his gun and pointed it at Blaylock. All six witnesses testified that Blaylock then turned around and began running away. Defendant chased after Blaylock and shot at Blaylock's back.

¶ 32        A forensic pathologist testified that Blaylock suffered two gunshot wounds. One shot entered his left hip and did not exit. The other shot entered his back, traveled through his lung, and exited his chest. Blaylock died of pneumonia resulting from the gunshot wound.

¶ 33        A Woodridge police officer testified that, on August 3, 2003, he located defendant at a home in Woodridge, Illinois. (Woodridge is approximately 89 miles from Rockford.) Defendant initially gave a false name but later gave his true name at the police station after learning he could be charged with obstructing justice.

¶ 34        A Rockford police detective testified that he attempted to obtain defendant's "side of the story" on four separate occasions between August 3 and 14, 2003. During one interview, the detective provided defendant with details of the investigation, including the eyewitness statements implicating defendant, and asked defendant whether it was possible Blaylock had a gun and defendant shot him in self-defense. Each time the detective asked defendant for his statement,

defendant answered that he was not present and did not know Blaylock.

¶ 35 Defendant testified that he went to the intersection of Henrietta and West State Streets to visit a friend. Defendant was standing with another friend, Darrell Cross, outside of Cross's parked car when Blaylock and three other men all started approaching defendant, yelling at him. Defendant testified he was scared and trying to keep an eye on everyone. He saw Blaylock reach under his shirt, so defendant pulled out his gun and "wav[ed] it around." After defendant said "get back," Blaylock reached slowly under his shirt. Defendant testified that he saw the butt of a gun in Blaylock's waistband so he shot Blaylock three times. He did not remember what happened after the shooting except that everyone began running.

¶ 36 On cross-examination, defendant agreed that when the detectives asked for his side of the story on August 3, 4, and 14, 2003, he told them he was not present at the shooting.

¶ 37 The only other witness to testify for the defense was Lonnie Thomas, who testified regarding a fight in 1998 that may have been the motivating incident for the 2003 shooting.

¶ 38 The trial court instructed the jury on self-defense and second degree murder. The jury found defendant guilty of first degree murder.

¶ 39 Defendant filed a posttrial motion arguing, among other things, that the trial court abused its discretion when it denied defendant's motion to continue to locate Perkins. The court denied the motion and subsequently sentenced defendant to a total of 60 years in prison (35 years for first degree murder plus a 25-year mandatory firearm enhancement).

¶ 40 B. The Direct Appeal

¶ 41 In 2005, defendant appealed, arguing that the trial court erred when sentencing him because it failed to take into account the cumulative effect of the normal sentence for first degree murder (see 730 ILCS 5/5-8-1(a)(1)(a) (West 2004)) and the add-on for the use of a firearm in

conjunction with the murder (see *id.* § 5-8-1(a)(1)(d)(iii)). The appellate court affirmed. *People v. Leach*, No. 2-05-1010 (2007) (unpublished order under Supreme Court Rule 23).

¶ 42                                    C. The Postconviction Petition

¶ 43        In August 2010, defendant, through counsel, filed a third amended petition for relief under the Act, alleging, among other things and relevant to this appeal, that appellate counsel was ineffective by failing to raise on direct appeal the trial court's "refusal to grant a continuance based upon the unavailability of defense witness, Troy Perkins." Defendant attached to the petition an affidavit of Perkins dated October 2008, in which Perkins averred that, just prior to the shooting, he saw Blaylock and someone he knew only as "Chuck" approach defendant while screaming at him. Perkins further stated that Blaylock was "fiddling" with his shirt around his waistband and "Chuck" lifted his shirt around his waistband. Perkins heard shots and ran away. He did not see who fired the shots.

¶ 44        In December 2011, the State filed a motion to dismiss all of defendant's postconviction claims. In March 2013, the trial court conducted a hearing on the State's motion to dismiss and took the matter under advisement.

¶ 45        In August 2013, the trial court issued an oral ruling denying the motion in part and allowing the motion in part. Relevant to this appeal, the court dismissed defendant's claim of ineffective assistance of appellate counsel for failure to argue that the court abused its discretion by denying defendant's motion to continue. The court did not specifically address the basis for its dismissal of this claim but stated generally that all of the dismissed claims were "completely meritless and either barred by collateral estoppel or waived or not rising to the level of *Strickland* standards." See *Strickland v. Washington*, 466 U.S. 668 (1984). The court advanced three claims (not at issue in this appeal) for a third stage "fact-finding evidentiary" hearing.

¶ 46    In November 2021, after several years of delay caused by a change in attorneys and litigation of supplemental postconviction claims, the trial court conducted the evidentiary hearing on the remaining claims. In December 2021, the court denied defendant's remaining claims.

¶ 47    This appeal followed.

¶ 48                              II. ANALYSIS

¶ 49    Defendant appeals, arguing that (1) the trial court erred by dismissing defendant's claim of ineffective assistance of appellate counsel at the second stage because defendant made a substantial showing that appellate counsel rendered ineffective assistance by failing to argue on direct appeal that the court abused its discretion by denying defendant's motion to continue and (2) alternatively, defendant received unreasonable assistance from his postconviction counsel for failure to allege facts contained in the trial record that were necessary to establish that appellate counsel was ineffective.

¶ 50    We disagree and affirm.

¶ 51                          A. The Applicable Law

¶ 52                        1. *The Post-Conviction Hearing Act*

¶ 53    The Act provides a method by which a defendant can assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8, 980 N.E.2d 1100. A proceeding under the Act consists of three stages. *Id.* ¶ 9.

¶ 54    At the first stage, the trial court conducts its own review of the petition to determine if the petition states the gist of a constitutional claim. *People v. Allen*, 2015 IL 113135, ¶ 24, 32 N.E.3d 615. "If the petition is not summarily dismissed at the first stage, the proceedings move to the second stage." *People v. House*, 2021 IL 125124, ¶ 16, 185 N.E.3d 1234.

¶ 55    "At the second stage of postconviction proceedings, counsel may be appointed to

represent the petitioner ***." *Id.* ¶ 17. To avoid dismissal, a defendant must set forth in his petition a substantial showing of a constitutional violation and attach any accompanying documentation. *Id.* "Upon a substantial showing of a constitutional violation, the petition must be advanced to the third stage, where the [trial] court conducts an evidentiary hearing." *People v. Brown*, 2017 IL 121681, ¶ 24, 102 N.E.3d 205 (citing 725 ILCS 5/122-6 (West 2012)). "Upon no showing, the petition should be dismissed." *Id.*

¶ 56        The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de novo*. *Id.*

¶ 57                    2. *Ineffective Assistance of Appellate Counsel*

¶ 58        "[A] defendant who contends appellate counsel rendered ineffective assistance must show (1) the failure to raise an issue on appeal was objectively unreasonable and (2) that decision prejudiced the defendant." *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 66, 92 N.E.3d 544. Prejudice has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. "Unless the underlying issue is meritorious, a defendant suffers no prejudice from counsel's failure to raise the issue on appeal." *Phillips*, 2017 IL App (4th) 160557, ¶ 66.

¶ 59                    3. *Motions To Continue Jury Trial*

¶ 60        In *People v. Walker*, 232 Ill. 2d 113, 125-26, 902 N.E.2d 691, 697-98 (2009), the supreme court set forth the law applicable to an appellate court's review of a trial court's granting or denial of a motion to continue, writing as follows:

> "It is well settled that the granting or denial of a continuance is a matter resting in the sound discretion of the trial court, and a reviewing court will not

interfere with that decision absent a clear abuse of discretion. [Citation.] However, '[w]here it appears that the refusal of additional time in some manner embarrassed the accused in the preparation of his defense and thereby prejudiced his rights, a resulting conviction will be reversed.' [Citation.]

Whether there has been an abuse of discretion necessarily depends upon the facts and circumstances in each case [citations], and '[t]here is no mechanical test *** for determining the point at which the denial of a continuance in order to accelerate the judicial proceedings violates the substantive right of the accused to properly defend.' [Citation.] Factors a court *may* consider in determining whether to grant a continuance request by a defendant in a criminal case include the movant's diligence, the defendant's right to a speedy, fair and impartial trial and the interests of justice. [Citations.] Other relevant factors include whether counsel for defendant was unable to prepare for trial because he or she had been held to trial in another cause [citation], the history of the case [citation], the complexity of the matter [citation], the seriousness of the charges [citation], as well as docket management, judicial economy and inconvenience to the parties and witnesses [citation]." (Emphasis added.)

¶ 61       A trial court abuses its discretion when its decision is " 'fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Kladis*, 2011 IL 110920, ¶ 23, 960 N.E.2d 1104 (quoting *People v. Ortega*, 209 Ill. 2d 354, 359, 808 N.E.2d 496, 500-01 (2004)).

¶ 62                                    B. This Case

¶ 63       Because a defendant cannot prevail on a claim of ineffective assistance of counsel

if the underlying claim lacks merit, defendant's appeal turns on whether the trial court abused its discretion when it denied his motion to continue. Defendant argues that the court did not exercise its discretion at all because it did not examine the *Walker* factors, which weighed in favor of granting the motion to continue. Regarding the *Walker* factors, defendant argues (1) trial counsel was diligent in attempting to procure Perkins as a witness, (2) Perkins was a material witness, and (3) the charge in the case was serious. Defendant contends that the court only considered the factor of "judicial economy," which did not outweigh counsel's diligence, Perkins's materiality, and the seriousness of the charges.

¶ 64　　　　Defendant is correct that the charges were serious. As to defendant's diligence in securing Perkins's testimony, we note that defendant was charged in August 2003. In April 2005, the parties set the July 18, 2005, jury trial date by agreement. It was not until July 15, 2005—almost two years after charges were brought and three months after announcing ready for trial—that defendant first became aware of Perkins's statement and that it was helpful to the defense. The discovery of Perkins as a witness was due to the assistance of the Rockford Detective Agency, which counsel did not seek until June of 2005. We agree with defendant, however, that once Perkins was identified, counsel was diligent in procuring his presence at trial. We would rate the factor of counsel's diligence as neutral, given the lapse of two years before counsel sought investigative assistance in developing defense witnesses.

¶ 65　　　　Regarding Perkins's materiality as a witness, we also view this factor as neutral for the simple reason that the trial court was never advised what Perkins's testimony would be. The only information the court had before it regarding this factor was defense counsel's representation that Perkins was a material eyewitness for the defense. At that point in time, defense counsel was aware of the details of Perkins's statement and had even tendered it to the prosecution. However,

counsel made no offer of proof to the court. In fact, this court is aware of the details of Perkins's statement only because his 2008 affidavit was an attachment to a postconviction petition filed in 2010. When the court denied defendant's motion to continue the jury trial in August 2005, defendant had not offered any facts upon which the court could assess the materiality of Perkins's testimony. It is only in retrospect that defendant is able to argue that the materiality factor weighs in favor of granting the continuance. We will not hold the court to have erred by failing to consider the contents of a statement the court never heard.

¶ 66          Regardless, we reiterate that (1) whether a trial court has abused its discretion depends on the facts and circumstances of the case and (2) "[t]here is no mechanical test" to be applied. (Internal quotation marks omitted.) *Walker*, 232 Ill. 2d at 125-26.  The factors suggested in *Walker* are just that—suggestions. Defendant's argument is predicated on a mechanical application of the *Walker* factors that results in his favor. We note, however, that defendant's analysis omits facts and circumstances unique to this case and material to our determination— namely, that (1) the trial court had already granted defendant a monthlong continuance of his jury trial (from July 18, 2005, to August 14, 2005) for the purpose of securing Perkins's attendance and (2) Perkins was purposefully evading service. These facts do not fit neatly into any of the *Walker* factors, which demonstrates the wisdom of the supreme court's admonition that the factors are not to be mechanically applied and each case turns on its own facts and circumstances.

¶ 67          We additionally note that (1) both private and public investigative agents (including a "tactical unit") were actively looking for Perkins from at least July 15 through August 15, 2005, without success; (2) Perkins had phone contact with detectives, meaning he was aware his presence was being sought; (3) despite this, Perkins failed to appear for the July trial setting and his unrelated court appearance; (4) the trial court issued a material witness warrant for Perkins,

observing that there were still several days to find him before defendant presented his case; (5) defense counsel asked for the August 15 continuance over defendant's objection; and (6) defense counsel was seeking a "very short" continuance.

¶ 68    We also disagree with defendant that the only factor the trial court considered was "judicial economy." In addition to noting that the case had been pending for two years, the court also observed, "We don't know *** when he might be found or whether he might be found. All we can do is our best in attempting to find him." The court addressed the matter of defendant's witnesses at a minimum of four hearings and offered tangible assistance in securing Perkins's attendance by giving defendant (1) financial assistance, (2) additional time, and (3) a bench warrant.

¶ 69    Based upon all of these facts and circumstances, we conclude that the trial court's decision to deny defendant's August 15, 2005, motion to continue did not come close to constituting an abuse of the court's discretion. Because the court did not abuse its discretion by denying defendant's motion to continue, defendant's postconviction claim that appellate counsel was ineffective for failing to raise the issue on appeal lacks merit. Accordingly, the court did not err by dismissing the claim at the second stage of postconviction proceedings.

¶ 70    For the same reason—namely, that defendant cannot show prejudice because his underlying claim that the trial court abused its discretion lacks merit—we reject defendant's alternative argument that postconviction counsel was ineffective for failing to allege facts contained in the record that were necessary to establish that direct appeal counsel was ineffective for failing to raise the court's denial of defendant's motion to continue. Notably, defendant argues that postconviction counsel failed to allege specific facts that would have established ineffective assistance of appellate counsel, but in so arguing defendant identifies no such specific facts.

Instead, he argues only that postconviction counsel was too vague. Moreover, this court's *de novo* review of the trial court's decision included a thorough examination of the record on appeal in its entirety and uncovered no such facts.

¶ 71                                    III. CONCLUSION

¶ 72          For the reasons stated, we affirm the trial court's judgment.

¶ 73          Affirmed.